IN RE D.A.

[Cite as *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105.]

(No. 2006–0514—Submitted September 20, 2006—Decided March 28, 2007.)

Lanzinger, J.

{¶ 1} We accepted this discretionary appeal to determine whether the parental rights of a mentally retarded couple were properly terminated and permanent custody of their son properly awarded to Tuscarawas County Job and Family Services. We reverse.

### Procedural Facts

{¶ 2} In early 2004, appellants voluntarily relinquished custody of their ten-year-old son, D.A., who was having behavioral problems, to appellee, Tuscarawas County Job and Family Services ("the agency"). After 30 days, the agency sought temporary custody of D.A. by filing a complaint alleging that the boy was a neglected and dependent child. The agency filed a motion to dismiss the count of neglect at the adjudicatory hearing, and the magistrate recommended that D.A. be found to be a dependent child. The trial court approved and adopted the magistrate's decision on April 14, 2004.

{¶ 3} The trial court adopted the agency's case plan developed for appellants, which required them to undergo psychological evaluations and follow the evaluating psychologist's recommendations. Both parents were required to attend parenting classes and were to be assessed for services by the Department of Mental Retardation and Developmental Disabilities ("MRDD"). The mother was also expected to attend therapy to learn to control her response to stress.

{¶ 4} The psychological evaluations revealed that D.A.'s father has an IQ of 62 on the Wechsler Adult Intelligence Scale and that his mother has an IQ of 59. Concluding that the parents' mental conditions severely limited their ability to provide adequate care for their son, the psychologist recommended individual therapy to improve their skills. Appellants began parenting classes at the agency in August 2004. Initially in a class with other parents, at the request of the parenting-education teacher, they began meeting for classes on an individual

basis for 30 minutes both before and after visits with their son. At the end of September, the teacher suspended appellants' classes because she believed that they might be better able to retain information if she waited until they had home visitations with D.A. and classes could be held in their home. In addition to parenting classes, appellants also attended seven therapy meetings at Community Mental Healthcare over the course of five months to help them deal with their grief and emotional issues related to their separation from D.A. and to discuss parenting issues, such as child discipline. With respect to the case plan's requirement that they be assessed for MRDD services, the agency was notified that appellants did not qualify for MRDD services due to their ability to meet their basic needs without help from MRDD.

{¶ 5} Despite these steps toward reunification, on January 21, 2005, the agency filed a motion seeking permanent custody of D.A. The trial court held a hearing on May 27, 2005. It found that, although appellants love their son very much and were willing to do anything necessary to bring him home, returning D.A. to them was not in his best interest, because they have "very low cognitive skills that hinder their day to day functioning" and "demonstrate no ability to engage in the type of complex thinking necessary to parent a child." The trial court expressed its concern that appellants function as the child's peers instead of as his parents. It further found that to allow "a normally functioning child like [D.A.] to be parented by two parents with the severe limitations demonstrated by [appellants] is to seriously jeopardize his healthy, successful future." The court found that D.A. "cannot and should not be placed with either parent within a reasonable time" because "despite diligent, reasonable efforts * * *, both parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal." The trial court ordered that D.A. be placed in the permanent custody of the agency.

{¶ 6} The parents appealed to the Fifth District Court of Appeals, which determined that the record supported the finding that both parents had failed continually and repeatedly to substantially remedy the conditions causing removal. The Fifth District also upheld the trial court's finding that granting the agency permanent custody was in D.A.'s best interest because returning him to appellants would seriously jeopardize his healthy, successful future.

{¶ 7} We accepted the discretionary appeal. *In re Adkins,* 109 Ohio St.3d 1423, 2006-Ohio-1967, 846 N.E.2d 533. In essence, appellants claim that the trial court failed to comply with statutory requirements in terminating their parental rights. We agree.

### Fundamental Right

{¶ 8} In *Troxel v. Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49, the United States Supreme Court noted that parents' interest in the care,

custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." The protection of the family unit has long been a paramount concern of the courts, as indicated in *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551:

{¶ 9} "The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), 'basic civil rights of man,' *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and '[r]ights far more precious * * * than property rights,' *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska,* supra, 262 U.S. at 399, 43 S.Ct. at 626 [67 L.Ed. 1042] the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma,* supra, 316 U.S. at 541, 62 S.Ct. at 1113 [86 L.Ed. 1655], and the Ninth Amendment, *Griswold v. Connecticut,* 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)."

{¶ 10} We note that this court has long held that "parents who are suitable persons have a 'paramount' right to the custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 297, 369 N.E.2d 1047, 1051–1052; *Clark v. Bayer* (1877), 32 Ohio St. 299, 310," *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, and that "[p]ermanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54. Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' Id." *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680.

{¶ 11} The fundamental interest of parents is not absolute, however. Once the case reaches the disposition phase, the best interest of the child controls. The termination of parental rights should be an alternative of "last resort." *In re Cunningham* (1979), 59 Ohio St.2d 100, 105, 13 O.O.3d 78, 391 N.E.2d 1034.

## Permanent–Custody Procedure

{¶ 12} Before parental rights are terminated and permanent custody granted to a children services agency, R.C. 2151.414(B)(1) requires a court to determine "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 14} "(b) The child is abandoned.

{¶ 15} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶ 16} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."

{¶ 17} R.C. 2151.414(E) provides guidelines for a court charged with determining whether a child cannot or should not be placed with either parent within a reasonable period of time under R.C. 2151.414(B)(1)(a) and requires that such a finding be made if it is established by clear and convincing evidence that one or more of 16 factors exist with respect to each parent.

{¶ 18} The court next must determine whether granting permanent custody to a children services agency is in the child's best interest. It is required to consider several factors, including the relationship between the child and the child's parents and foster caregivers, the child's wishes, the custodial history of the child, and the child's need for a legally secure permanent placement. R.C. 2151.414(D).

## Analysis

{¶ 19} Appellants argue that their parental rights were terminated solely due to their limited cognitive abilities, violating their rights to raise their son. They contend that their low IQ scores were the only objective evidence to support a finding that D.A. could not or should not be placed with them and that it was in his best interest to terminate their parental rights.

{¶ 20} The agency acknowledges that R.C. 2151.414 does not allow for the termination of parental rights based on a parent's cognitive abilities alone, but argues that the trial court made sufficient findings under R.C. 2151.414(E)(1) and (2) to support the termination of parental rights.

{¶ 21} To satisfy either R.C. 2151.414(E)(1) or (2) regarding why D.A. could not or should not be returned to his parents, the evidence must show:

{¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to

assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 23} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [disposition] hearing * * *."

{¶ 24} D.A. was initially removed from his home at his mother's request due to his aggressive behavior and her concern that she could not adequately handle him. After the agency was awarded temporary custody, appellants were given four objectives in the case plan: (1) complete psychological evaluations and follow all recommendations, (2) attend parenting classes, (3) complete an MRDD assessment, and (4) attend therapy. At the disposition hearing, there was testimony that D.A.'s defiant behavior decreased over time. It is undisputed that appellants complied with every aspect of their case plan with the exception of completing parenting classes, and that failure was due to the agency's suspension of classes after one month.

{¶ 25} What was disputed was appellants' ability to parent D.A. due to their mental retardation. The trial court found as follows:

{¶ 26} "3. [D.A.] has progressed well in foster care even though he would still prefer to be with his parents. It is clear that there is a strong family bond between [D.A.] and his family. This Court recognizes that this family does not demonstrate many of the irresponsible, uncaring, or dangerous characteristics that are regularly evident in many permanent custody cases. It is clear that [D.A.'s] parents love him very much and are willing to do anything necessary to secure his return home.

{¶ 27} "4. Evidence that this would not be in the best interest of [D.A.] is revealed in the results of the psychological evaluations of his parents. Both [father and mother] demonstrate IQ levels between 62 and 59, respectively. Practically speaking, both parents have no real comprehension as to why [D.A.] was removed form [sic] their care. They possess very low cognitive skills that hinder their day to day functioning. They demonstrate no ability to engage in the type of complex thinking necessary to parent a child. [The parents] did not internalize any lessons provided in their parenting classes in any significant way.

While the supervised family visits have always gone well, it was clear that both parents functioned as peers of their son instead of his parents. Unfortunately, the Court has no information to indicate that the deficits demonstrated by [the parents] can be improved to any significant degree.

{¶ 28} "5. [D.A.] continues to do well in school and his behavior is very appropriate. He does not demonstrate any intellectual limitations and performs well in the mainstream classroom.

{¶ 29} "6. To expect a normally functioning child like [D.A.] to be parented by two parents with the severe limitations demonstrated by [the parents] is to seriously jeopardize his healthy, successful future."

{¶ 30} The trial court concluded that "despite diligent, reasonable efforts and planning by the Tuscarawas County Job and Family Services to remedy the problems which caused removal of the child, both parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal"[1] and that "[t]hese parents have demonstrated a lack of commitment toward their child and have failed to provide an adequate home for the child at this time and cannot do so within a year of this litigation."

{¶ 31} The psychologist testified that appellants lacked the skills to provide adequate care and expressed concern that due to their mental retardation, they would use authority instead of reasoning to obtain D.A.'s compliance. There is no evidence to support this concern. In fact, it was the exact opposite that led to this case's initiation. His mother recognized that she did not know how to handle D.A. and sought help.

{¶ 32} The parenting-education teacher testified that appellants function as D.A.'s peers and that his mother has displayed attention-seeking behavior around him. The teacher did acknowledge, however, that appellants had retained some of the parenting-class information from week to week and that the mother recognized when D.A. needed discipline and attempted to discipline him. The teacher expressed concern about the parents' ability to consistently apply the skills taught in her classes. But they were never given an opportunity to apply these parenting skills, since they were never permitted to complete the classes. In *In re Alexis K.*, 160 Ohio App.3d 32, 2005-Ohio-1380, 825 N.E.2d 1148, at ¶ 42, the Sixth Appellate District determined that "[w]ithout an opportunity for a practical application of the only skills appellee deemed necessary to remediate the condition prompting the children's removal, we fail to see clear and convincing

---

1. Although the trial court included the language "for a period of six months or more" in its finding, this language was removed from R.C. 2151.414(E)(1) when the statute was amended in 1996. Am.Sub.H.B. No. 419, 146 Ohio Laws, Part III, 4660, 4681.

evidence that appellant did not remedy the conditions which prompted the children's removal from the home."

{¶ 33} Despite making several findings regarding the parents' limited cognitive abilities, the trial court did not find that appellants were unable to provide an adequate home for D.A. due to their mental retardation, a finding that is required to satisfy R.C. 2151.414(E)(2).[2] Furthermore, the evidence does not support a finding that appellants failed to provide D.A. with an adequate permanent home. There is no evidence that he lacked adequate clothing, food, shelter, or care. He performed well in school and displayed appropriate behavior.

{¶ 34} The dissent relies in part on the family's previous contact with the agency, including the removal of two other children from the mother many years before, as well as the case manager's testimony that the mother displayed aggressive behavior toward D.A. during a visitation. But as the court of appeals noted, the trial court did not use the prior history as a reason that D.A. could not or should not be returned to his parents within a reasonable time. See *In re Adkins*, Tuscarawas App. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, at ¶ 38. Moreover, the "aggressive" behavior occurred during a basketball game that the family played during visitation. Thus, these factors do not support the finding that D.A. could not or should not be returned to his parents.

{¶ 35} As for what would be in D.A.'s best interest, the trial court again focused on his parents' limited cognitive abilities. Their mental retardation, however, is not what should have been considered. Instead, the court should have considered factors such as their relationship with their child, whether they had ever harmed him, and where the child wished to live. R.C. 2151.414(D). All of these factors favor appellants. The evidence showed that they have a very loving relationship with their son, have never harmed him, and desire to do whatever is necessary to be reunited with him. D.A. also wishes to return home.

{¶ 36} The trial court stated that D.A.'s future could be "seriously jeopardized" if he remained with his parents. But there was no evidence that they have harmed D.A. either physically, emotionally, or mentally. D.A. has done well in school, and his behavior is appropriate. At this point, it is speculation to say that he may not reach his full potential if he remains with his parents. We hold that when determining the best interest of a child under R.C. 2151.414(D) at a permanent-custody hearing, a trial court may not base its decision solely on the limited cognitive abilities of the parents.

---

2. The trial court did find that appellants had "demonstrated a lack of commitment toward their child and have failed to provide an adequate home for the child." This finding is apparently an attempt to find that R.C. 2151.414(E)(4) was satisfied. The court of appeals rejected that finding, and that issue was not appealed to this court.

{¶ 37} We do not mean to minimize the trial court's concern about appellants' ability to parent their son. R.C. 2151.414, however, does not permit a parent's fundamental right to raise his or her child to be terminated based on mental retardation alone. In other cases in which the parental rights of mentally retarded persons have been terminated pursuant to R.C. 2151.414(E)(1) or (2), objective evidence existed to show that the statute was satisfied. See, e.g., *In re C.E.*, Butler App. Nos. CA2006–01–015 and CA2006–02–024, 2006-Ohio-4827, 2006 WL 2663464 (the mother needed constant supervision and prompting to meet child's basic needs and had inadequate housing); *In re King,* Fairfield App. No. 05 CA 77, 2006-Ohio-781, 2006 WL 401598 (the mother consistently relied on others to meet many of her basic needs and lost her housing).

{¶ 38} Finally, the dissent indicates that we would not hesitate to find that it was in D.A.'s best interest to be removed from his parents if the same actions were undertaken by parents of average intelligence and there was concern about their future conduct. But that is simply not true. The record fails to demonstrate any harm or threat of harm to D.A., and the trial court's repeated reference to the low cognitive abilities of the parents indicates that that was the sole reason for the termination of parental rights.

{¶ 39} Due to the emphasis placed on D.A.'s parents' mental retardation and the lack of clear and convincing evidence that their limited abilities have caused or threatened to cause harm to him, we conclude that the trial court failed to comply with R.C. 2151.414 and that the termination of parental rights was not in D.A.'s best interest.

## Conclusion

{¶ 40} We hold that the termination of appellants' parental rights based solely on mental retardation does not comply with R.C. 2151.414. The judgment of the court of appeals is reversed.

*Judgment reversed.*

DONOFRIO, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., and O'CONNOR, J., concur in part and dissent in part.

GENE DONOFRIO, J., of the Seventh Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 41} I concur in the syllabus of the majority opinion, but I respectfully dissent from the majority's application of the rule of law to the facts of this case and from its judgment. While I agree that when determining the best interest of a child under R.C. 2151.414(D), a trial court may not rely solely on the limited cognitive abilities of the parents, I disagree that the trial court in this case based the decision to terminate custody on those facts alone. To the contrary, the trial court considered the factors required by R.C. 2151.414 and concluded that granting permanent custody of D.A. to Tuscarawas County Job and Family Services ("the agency") was in the child's best interest.

{¶ 42} R.C. 2151.414 protects a parent's constitutional rights in a permanent-custody proceeding by establishing the procedures a trial court must follow and the findings a trial court must make before terminating parental rights. R.C. 2151.414(B) requires that all of the trial court's findings be supported by clear and convincing evidence. This court has defined "clear and convincing evidence" as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 43} Here, the court was determining both the best interest of the child under R.C. 2151.414(D) and whether the child could be placed with either parent within a reasonable time under R.C. 2151.414(E). In determining the best of interest of a child under R.C. 2151.414(D), the court shall consider "all relevant factors," including, but not limited to, five specific factors listed in the statute. These five factors include (1) "[t]he interaction and interrelationship of the child with the child's parents," (2) "[t]he wishes of the child," (3) "[t]he custodial history of the child," (4) "[t]he child's need for a legally secure permanent placement," and (5) whether factors listed in other specified subsections apply.

{¶ 44} In determining whether a child can be placed with either parent within a reasonable time, a court must, under R.C. 2151.414(E), consider "all relevant evidence" and determine by "clear and convincing evidence" whether one or more factors from a list of factors exist as to each of the child's parents. Under subsection (E)(1) (the first factor), a court must determine whether following the placement of the child outside the home and "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Under subsection (E)(2), a court must determine whether chronic mental illness of the parent "is so severe that it makes the parent unable to provide an adequate

permanent home for the child at the present time and, as anticipated, within one year." Under subsection (E)(16) (the final factor in the list), the court must consider "[a]ny other factor the court considers relevant."

{¶ 45} The record in this case provides several facts that are relevant to the court's determinations under R.C. 2151.414. D.A.'s family has long been involved with the agency, and previously, two other children were removed from the mother's custody. The trial court found that the agency first became involved in the family with regard to D.A. in 1996, followed by contacts in 1998 and 2004.

{¶ 46} In 2004, D.A. was placed in temporary custody with the agency after his mother contacted the police and indicated that she was afraid she would hurt her son if he were not removed from her home. The court also found that the parents "have no real comprehension as to why [D.A.] was removed from their care" and that there was "no information to indicate that the deficits demonstrated by [the parents could] be improved to any significant degree."

{¶ 47} The agency case manager testified that she had observed the mother display aggressive behavior toward her son during a supervised visit and that she did not observe any changes in the ability of the parents to care for D.A. during the year D.A. was in temporary custody.

{¶ 48} An agency employee responsible for parent-education classes for D.A.'s parents also observed no real changes in the parents' ability to care for their son and continued to be concerned over the parents' lack of understanding of basic parenting concepts. The agency had a difficult time providing services to the parents and implementing the case plan as a result of the intellectual limitations of the parents and the parents' failure to engage in appropriate services.

{¶ 49} A board-certified psychologist who evaluated D.A.'s parents testified as to her significant concern regarding the parents' ability to provide adequate care for D.A.

{¶ 50} R.C. 2151.414 requires clear and convincing evidence to show that the child's best interest is served by a grant of permanent custody to the agency. Clear and convincing evidence does not require absolute certainty—the standard requires only "proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases." *Cross v. Ledford,* 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 51} The trial court's judgment entry states that the court considered all the factors listed in R.C. 2151.414 and found that granting permanent custody of D.A. to the agency was in the best interest of the child. There is sufficient evidence to support this finding, independent of a finding regarding the mental capacities of the parents. Had the trial court simply concluded that the evidence of the

parents' limited mental capacities was sufficient evidence to support permanent commitment of D.A. to the agency, I would concur in the majority's application of the law to the record in this case. But evidence of the parents' mental capacities was not the sole basis of the trial court judgment. Surely, if the parents were of average intelligence and had engaged in this same conduct and the expert's opinion regarding future parental conduct was the same, the majority would conclude that the trial court was correct in holding that it was in D.A.'s best interest to be removed from his parents.

{¶ 52} The court of appeals correctly stated that it could not overturn the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶ 17, citing *Cross v. Ledford,* 161 Ohio St. 469, 53 O.O 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 53} Because I conclude that the court of appeals correctly applied the proper standard of review to the trial court judgment, I respectfully dissent.

O'CONNOR, J., concurs in the foregoing opinion.

---

J. Dean Carro, for appellants.

David W. Haverfield and Michelle A. McGonnell, for appellee.

Katherine Hunt Federle and Jason A. Macke, urging reversal for amicus curiae, the Justice for Children Project.