OPINION *Page 2 
{¶ 1} Appellant Kathy Kinkel ("mother") appeals the November 20, 2006 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities with respect to her minor daughter, and granted permanent custody of the child to appellee Stark County Department of Job and Family Services ("the department").
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 17, 2006, mother gave birth to a daughter, Katherine Kinkel. The following day, August 18, 2006, the department filed a Complaint for Permanent Custody, alleging Katherine to be a dependent child. The Complaint was based upon the department's prior involvement with mother, which resulted in mother's parental rights, privileges and responsibilities with respect to her six other children being terminated and the department's receiving permanent custody of those children. The trial court granted temporary custody of Katherine to the department following a shelter care hearing on August 21, 2006. The trial court conducted a hearing on the permanent custody complaint on November 1, 2006.
 {¶ 3} Aimee Thomas, a psychology assistant at Northeast Ohio Behavioral Health, testified she conducted mother's parenting evaluation for another case in 2004. In completing the evaluation, Thomas administered a series of intelligence and functional assessment tests. The results of the testing indicate mother has an IQ of 61, which suggest she is functioning at an extremely low intellectual ability. Thomas added 99.5% of the population functions at a higher level than mother functions. Mother also completed a functional academics skills test, which measured her basic math and *Page 3 
reading skills. Mother's score on this test was well below average. Thomas explained the results of these tests indicate mother will have a great difficulty learning and incorporating new information as well as difficulty in abstractly applying information in new situations. Thomas commented even if mother was able to retain the information, her ability to actually apply such to the children as they grow and develop was extremely compromised. When asked if there were any services Thomas felt could have been provided to mother to give her the opportunity to regain custody of Katherine, Thomas replied, "Absent somebody moving in and living with her twenty-four/seven no." Tr. at 8. Mother was unable to successfully complete the additional tests Thomas administered; and, as such, the test results had limited clinical value. These test results also suggest mother demands attention and engages in a lot of showy behavior. Thomas noted the parental stress index was not given to mother because of her inability to read.
 {¶ 4} Thomas added she conducted a personal interview with mother. Due to mother's limited functioning, Thomas structured or simplified questions in order to ensure mother's comprehension. Thomas found mother demonstrated a lack of insight into the dynamics with her previous children of whom she had lost custody. Mother did not appear to have support from others in raising the children. The father of mother's oldest child had been physically and emotionally abusive to mother. Thomas questioned the support mother received from her husband, Charles Kinkel, who is the father of Katherine and five of mother's other children. Mother acknowledged she was collecting SSI, but she completely denied having any learning disabilities. While Thomas believed mother should be afforded the opportunity to participate in parenting *Page 4 
classes, she expressed concerns about mother's ability to understand, integrate, and abstractly apply any information from those classes. Thomas acknowledged she had conducted the evaluation of mother in May, 2004, but noted there was no need for any additional testing based upon mother's IQ.
 {¶ 5} Matthew Curry, a social worker with the department, testified he was the intake assessment worker assigned to Katherine's case. Curry explained the child was born in Wooster, Ohio. When mother and Charles Kinkel presented at the hospital, they gave false names to hospital personnel. Curry visited mother at the hospital, and expressed the department's concerns. Curry informed mother of the department's intention to seek permanent custody of Katherine. Mother told Curry she understood what he was telling her. Based upon the information contained in the department's files regarding mother's other children, and the fact no intervening factors had arisen since mother lost the children, the department made the decision to seek permanent custody of Katherine at the onset of the matter.
 {¶ 6} The trial court proceeded to the best interest portion of the hearing. LaShawn Hye, the ongoing family service worker, testified Katherine is a two month old Caucasian child with no identifiable developmental or physical disabilities. Katherine's foster parents informed Hye she sleeps well, eats regularly, and appears adjusted. Katherine has been in the home since she was four days old. Hye noted one of Katherine's older siblings, lives in the same home and has since been adopted by the foster parents. Hye explained a case plan had not been developed as reunification had not been the direction of the case due to the parents' recent history. On cross-examination, *Page 5 
Hye acknowledged he had not observed anything concerning about mother's behavior during visits with the child.
 {¶ 7} The trial court filed Findings of Fact and Conclusions of Law on November 20, 2006. Therein, the trial court found mother's "low level of intelligence and functioning evidences itself in a concrete pattern of thinking and lack of insight into everyday problems," which would render mother "unable to anticipate problems or recognize the need for help or seek the same". Findings of Fact and Conclusions of Law at ¶ 18. The trial court further found mother's parenting and intellectual deficiencies resulted in a lack of adequate parental care, and her limitations and extremely low level of functioning made her unable to safely parent the child. The trial court added mother is unable to provide an adequate environment for Katherine. Id. Via Judgment Entry filed November 20, 2006, the trial court terminated mother's parental rights, privileges and responsibilities with respect to Katherine, and granted permanent custody of the child to the department.
 {¶ 8} It is from this judgment entry, and the findings of fact and conclusions of law mother appeals, raising the following assignments of error:
 {¶ 9} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF KATHERINE KINKEL TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT REASONABLE EFFORTS TO ASSIST THE PARENT TO COMPLETE THE CASE PLAN AND THAT THE DEPARTMENT USED REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 6 
 {¶ 10} "II. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY [SIC] KATHERINE KINKEL TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} "III. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF KATHERINE KINKEL TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 12} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I, II, III {¶ 13} Because mother's three assignments of error are interrelated, we shall address them together. In her first assignment of error, mother challenges the trial court's determination the department used reasonable efforts to assist her in completing the case plan and reasonable efforts to prevent the removal of Katherine. In her second assignment of error, mother maintains the trial court's finding Katherine cannot or should not be placed with her was against the manifest weight and sufficiency of the evidence. In her third assignment of error, mother asserts the trial court's finding the best interest of Katherine would be served by granting permanent custody to the department was against the manifest weight and sufficiency of the evidence. *Page 7 
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 15} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 16} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. *Page 8 
 {¶ 17} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 18} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C.2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 19} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 20} In accordance with R.C. 2151.414. the department prepares and files a case plan for each case in which it is involved. The case plan includes objectives *Page 9 
deemed necessary for reunification, when appropriate. The department must put forth a good faith effort to initiate and implement the plan, and the parents have a duty to complete the objectives with due diligence. R.C. 2151.419 mandates the agency make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. R.C.2151.419 provides exceptions to this requirement. As relevant herein, R.C. 2151.419 provides:
 {¶ 21} "(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home: * * *
 {¶ 22} (e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 23} Specifically, Mother contends because the department never prepared a case plan for her, she was never given the opportunity to meet the objectives and demonstrate her commitment to Katherine and willingness to provide an adequate, permanent home for her. The trial court found Katherine cannot and should not be placed with mother as mother was unable to provide adequate parental care due to her parenting and intellectual deficiencies. Additionally, the trial court found mother was unable to provide an adequate environment for the child. *Page 10 
 {¶ 24} In its November 20, 2006 Findings of Fact and Conclusions of Law, the trial court included the general language of R.C. 2151.419, which mandates the trial court determine whether the department made reasonable efforts. The trial court did not make a specific finding regarding the department's efforts in the instant action. We find the trial court's omission is not fatal as the department was not required to make reasonable efforts because mother had her parental rights with respect to other children involuntarily terminated. R.C.2151.419(A)(2)(e).
 {¶ 25} Mother further argues she "should not be punished because she may be of limited intellectual capacity." Brief of Appellant at 7-8. Mother adds, "Lower intellectually functioning individuals can still be loving, caring and adequate parents." Id. at 8.
 {¶ 26} Recently, in In Re: D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, the Ohio Supreme Court addressed the propriety of the trial court's termination of the parental rights, privileges and responsibilities of parents with limited intellectual capacity.[1] The psychological evaluations revealed the father had an IQ of 62, and the mother had an IQ of 59. The psychologist concluded the parents' mental conditions severely limited their ability to provide adequate care for their child. After a hearing on the agency's motion for permanent custody, the trial court found, although the parents loved their child very much and were willing to do anything necessary to bring him home, returning the child to them was not in his best interest because they have "very low cognitive skills that hinder their day to day functioning" and "demonstrate no ability to engage in *Page 11 
the type of complex thinking necessary to parent a child". Id at par. 5. The Court of Appeals affirmed the trial court's decision.
 {¶ 27} On review, the Ohio Supreme Court reversed, holding, "When determining the best interest of a child under R.C. 2151.414(D) at a permanent custody hearing, a trial court may not base a decision solely on the limited cognitive abilities of the parents." Id at par. 36. The Supreme Court continued R.C. 2151.414 "does not permit a parent's fundamental right to raise his or her child to be terminated based on mental retardation alone." Id at par. 37 (Emphasis added). The Court noted, "Despite making several findings regarding the parents' limited cognitive abilities, the trial court did not find that appellants were unable to provide an adequate home for D.A. due to their mental retardation, a finding that is required to satisfy R.C. 2151.414(E)(2). Furthermore, the evidence does not support a finding that appellants failed to provide D.A. with an adequate permanent home. There is no evidence that he lacked adequate clothing, food, shelter, or care. He performed well in school and displayed appropriate behavior." Id at par. 33.
 {¶ 28} We find the instant action to be distinguishable from In Re:D.A. Although the trial court recognized mother's limited cognitive ability and set forth its concern such would affect her parenting, the trial court found mother was unable to safely parent the child and was unable to provide an adequate environment for her. Furthermore, because the child was removed shortly after birth, the absence of evidence to provide adequate clothing, food, shelter or care is a non-factor. Thus, we find the trial court's findings did not suffer from the same deficiencies as the trial court's findings in In Re: D.A. *Page 12 
 {¶ 29} During mother's prior involvements with the department, she failed to comply with the objectives of her case plans, including counseling assessments, Goodwill parenting, and supervised visitation. Even if she had complied, mother would be unable to overcome the problems due to her limited intellectual ability. The witnesses who testified at the hearing, all confirmed mother's IQ would not change and any further services would not rectify or improve the situation.
 {¶ 30} Based upon the foregoing, and the entire record in this matter, we find the trial court's decision it would be in Katherine's best interest to grant permanent custody to the department was not against the manifest weight or the sufficiency of the evidence.
 {¶ 31} Mother's first, second and third assignments of error are overruled.
 {¶ 32} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 By: Hoffman, P.J. Farmer, J. and Delaney, J. concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] In Re: D.A., supra, was decided after the trial court's decision herein and after the parties' briefs had been filed. *Page 1