DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant-Mother, Carolyn Newlun, appeals from the Juvenile Division of the Athens County Common Pleas Court's decision and judgment entry terminating her parental rights and responsibilities and placing her children, M.N., T.N., K.N. and L.N., III, in the permanent *Page 2 
custody of Athens County Children Services. Appellant raises a single assignment of error, contending that the trial court committed prejudicial error by finding that it was in the children's best interest under R.C. 2151.414(D) for permanent custody to be granted to Athens County Children Services. Appellant claims that the grant of permanent custody was based solely on her cognitive ability. Because competent credible evidence supports the trial court's determination that awarding ACCS permanent custody would serve the children's best interests, we find Appellant's assigned error to be without merit. Therefore, we affirm the decision of the trial court.
 FACTS {¶ 2} The record reveals the following facts pertinent to this appeal. Carolyn Newlun and Leonard Newlun, Jr. are the parents of four children, M.N., born September 20, 1993, T.N., born July 11, 1995, K.N., born February 15, 1999, and L.N., III, born January 21, 2001. On October 30, 2006, Athens County Children Services ("ACCS") filed complaints with respect to each of the four children in the Athens County Juvenile Court, alleging M.N. and T.N. to be abused, neglected and dependent and alleging K.N. and L.N., III to be neglected and dependent children. The complaints that were filed requested protective supervision orders and specifically *Page 3 
alleged that both parents had problems with drug and alcohol abuse, that law enforcement had been called to the family residence on multiple occasions for domestic violence, and that Leonard Newlun was verbally and physically abusive towards Carolyn and the two oldest children. An adjudication hearing was held on November 21, 2006. Appellant was present at the hearing and stipulated to the allegations contained in the complaints. As a result, M.N. and T.N. were adjudicated to be abused, neglected and dependent, and K.N. and L.N., III were adjudicated to be neglected and dependent children. As a result of these adjudications, it was ordered that the children remain in the home with Appellant and have only supervised visits with their father at ACCS. It was further ordered that Leonard Newlun was not to live in the family home, nor visit there. The matter was scheduled for final disposition on December 12, 2006.
 {¶ 3} Prior to the scheduled disposition hearing, on December 7, 2006, ACCS filed a motion to modify the dispositional request from a protective supervision order to temporary custody, as well as a motion for emergency custody, alleging that the children had disclosed that their father had been visiting and possibly living in the house, that an ACCS case worker visited the home and found Mr. Newlun to be present in the house, and that neither Appellant, nor the children's grandmother had reported Mr. Newlun's *Page 4 
presence in the home, as required by the safety plan. The motions were granted the same day that they were filed and all four children were placed in the emergency custody of ACCS. A disposition hearing was subsequently held on December 28, 2006, resulting in a grant of temporary custody of all four children to ACCS
 {¶ 4} At a review hearing held on August 20, 2007, the court continued temporary custody of the children with ACCS and found that reasonable efforts had been made to reunify the family. As a result of concerns related to Appellant's inability to implement parenting techniques learned through the services that had been provided to her, ACCS requested that Appellant undergo a psychological evaluation. Appellant agreed to undergo an evaluation, which was conducted by Mid-Ohio Psychological Services, Inc., on September 3, 2007. Thereafter, on September 25, 2007, ACCS filed a motion to extend temporary custody based upon the results of the psychological evaluation, which diagnosed Appellant with mild mental retardation and alcohol dependence, among other diagnoses. The motion was further based upon Leonard Newlun's "ongoing legal issues, homelessness and lack of follow through with HRS [Health Recovery Service] and DVIP [Domestic Violence Intervention Program]." In addition, the motion expressed the intention of ACCS to file a motion for permanent *Page 5 
custody on or before December 27, 2007. ACCS's motion for continued temporary custody was granted at a review hearing held on October 15, 2007.
 {¶ 5} Subsequent to the court's October 15, 2007, continuation of the temporary custody order, ACCS filed, on October 17, 2007, a Semi Annual Administrative Review ("SAR"). The SAR noted that "Carolyn and Leonard Newlun have the same problems that they had when the children came into care. Carolyn's cognitive deficit is a large part of why she can't learn how to protect or parent her children. She continues to minimize the domestic violence that went on in her home and her substance abuse problem. [The children] require a great deal of attention to help them with behavior issues as well as cognitive delays." The SAR also provided that
"Carolyn has attended most of her appointments required * * * . Unfortunately, little progress has been made in addressing her core issues. Carolyn appears to address these issues on the surface, but has not committed to making any real change."
Further, the SAR provided that
"Leonard still hasn't resolved the issues that led to him being a perpetrator of domestic violence. Substance abuse continues to be aproblem for Carolyn and Leonard. Carolyn continues to have dilute drugscreens and Leonard has admitted to using alcohol prior to visiting his children. Alcohol abuse seems to be the way that Leonard and Carolyn cope with stress. Parenting practices are still a concern. Carolyndoesn't appear to be able to implement new parenting techniques withoutprompting. It is still not clear whether or not Carolyn and Leonard plan to reconcile. Carolyn has little family support. * * * Carolyn left Rural Women's Recovery Program and *Page 6 
Leonard did not follow through with checking in to the Clem House." (Emphasis added).
 {¶ 6} Thereafter, ACCS filed a motion for permanent custody on January 2, 2008. The motion was based upon (1) Appellant's lack of ability to learn necessary skills to appropriately parent and protect her children and lack of insight to recognize problems that can be harmful to her children; (2) the children's placement in the temporary custody of ACCS since December 28, 2006, constituting more than twelve months of a consecutive twenty-two month period; (3) Appellant's failure to acknowledge that she was a victim of domestic violence; (4) Appellant's failure to acknowledge that she has an alcohol addiction; (5) Appellant's IQ of 68 and her attendant inability to learn new information without excessive community support and home-based therapy; (6) Appellant's diagnosed alcohol dependence, partner relational problem, parent-child relational problem, neglect of child, dependent personality disorder, and mild mental retardation; and (7) Mr. Newlun's recent arrests, inconsistent visitation with the children, homelessness, alcohol addiction and failure to address his anger issues.
 {¶ 7} A guardian ad litem report was filed with the court on February 15, 2008. In his report, the guardian ad litem recommended that all four children be placed in the permanent custody of ACCS, based upon the following reasoning: *Page 7 
"Neither Carolyn nor the elder Leonard has complied sufficiently with the case plan with regards to anger management, family skills training, or substance abuse counseling, to give me any confidence that they will be able to provide a safe and suitable home for any of the children. Given his history of violence and abuse, and his apparent inability to deal with these issues or with his substance abuse, the elder Leonard certainly ought not to have any role in parenting these children. Although Carolyn has filed for divorce from Leonard, she seems not fully to understand the level of threat he represents to the health and safety of the children and to herself, and it is not at all clear that simply being divorced from him will be sufficient motivation for her to keep him away from the children or, indeed, from herself. In her own case, while she clearly loves her children, it is equally clear that she cannot adequately care for all of them by herself; given her limitations in understanding the necessary and sufficient conditions for adequate health, safety and discipline. According to the report of Karis Mason and Robin Rippeth, the assessors of Carolyn Newlun for Mid-Ohio Psychiatric Services, Carolyn `exhibits cognitive delays [that] impede her ability to recognize dangers to herself and her children', [sic] and her `prognosis with regard to her parenting ability is poor.'"
 {¶ 8} Subsequently, hearings on the motions for permanent custody were held on March 14 and April 18, 2008. Kira Shumm, ACCS caseworker testified. Ms. Shumm testified with regard to the extensive educational and behavioral needs of the children as follows:
Q. Do any of the children have special needs?
A. Yeah, they do. * * * they require a great deal of help with their homework and a great deal of accountability and checking the homework and making sure that's done. * * * All of the kids with their behavior problems require so much structure and so much follow through with whatever boundaries and guidelines are set up for them. If they don't have that structure and routine and if they don't know what the consequence for their actions are they will just do whatever they want to do. I mean, they really need a lot of guidance and so as far as special needs I would say they're behavior problems. They are *Page 8 
very challenging kids to manage. It takes a lot of care to manage the kids."
* * *
Q. Have you had an opportunity to observe visitation between mother and the children?
A. Yeah.
* * *
Q. Is she able to control their behavior?
A. No.
Q. And do you believe she's able to protect her children?
A. Based on what I know about Carolyn, uh, with her cognitive delaysand substance abuse disorder, uh, I don't know that she would evenrecognize harm to her children. So I don't think that she could protect her children.
Q. Do you believe that permanent custody is in the best interest of the children?
A. Yeah.
Q. And why is that.
A. Well, I cited that Carolyn has worked on a lot of the areas of her case plan and I think that's the most difficult part of this case is that Carolyn has tried very hard. She's attended her counseling sessionsand attended her alcohol counseling sessions but has not been able tolearn how to make change happen in her life. So with a cognitive delay and an inability to learn new concepts it's difficult to teach somebody how to recognize harm to the children, how to protect the children, how to parent the children. So because of all of those things the alcoholdependence, the cognitive delay, the substance abuse *Page 9 disorder all of those things are why I believe it's in the bestinterests of the children to be in the permanent custody of theagency." (Emphasis added).
 {¶ 9} The guardian ad litem, Scott Carter, testified at the hearing with respect to his recommendations regarding permanent custody as follows:
Q. Have you formed an opinion regarding the agencies motion for permanent custody?
A. Yes I have.
Q. And what is that opinion?
A. I'm in favor of the agencies motion.
Q. And why do you say that?
A. Well, in my view it's in the best interests of the children to be put into permanent custody.
After hearing the evidence presented, the court awarded permanent custody of all four children to ACCS by entry dated April 30, 2008. It is from that entry that Appellant now appeals, assigning a single assignment of error for our review.
 ASSIGNMENT OF ERROR {¶ 10} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT IT WAS IN THE CHILDREN'S BEST INTEREST UNDER O.R.C. 2151.414(D) FOR PERMANENT CUSTODY TO BE GRANTED TO ATHENS COUNTY CHILDRN [SIC] SERVICES BASED SOLEY [SIC] ON MOTHER'S COGNITIVE ABILITY." *Page 10 
 APPELLATE STANDARD OF REVIEW {¶ 11} Initially, we note that an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much *Page 11 
evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 419,674 N.E.2d 1159; see, also, In re Christian, Athens App. No. 04CA10,2004-Ohio-3146.
 STANDARD FOR GRANTING PERMANENT CUSTODY {¶ 12} A trial court may not award a children services agency permanent custody absent clear and convincing evidence. The Supreme Court of Ohio has defined "clear and convincing evidence" as: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. *Page 12 
 PERMANENT CUSTODY PRINCIPLES {¶ 13} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In reMurray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see also, In reD.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. See D.A. at ¶ 11. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100,106, 391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54,58). Thus, the state may terminate parental rights when a child's best interest demands such termination. D.A., at ¶ 11.
 {¶ 14} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1). Additionally, when considering *Page 13 
whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * * whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
 PERMANENT CUSTODY FRAMEWORK {¶ 15} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. *Page 14 
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 16} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests. Here, the trial court found that R.C. 2151(B)(1)(d) applied, thus, there was no need to find that the children could not or should not be placed with either parent in a reasonable amount of time. Because the parties do not dispute that the children had been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the only issue remaining is whether the grant of permanent custody was in the best interest of the children, or whether, as Appellant argues, the grant of permanent custody was based solely on her limited cognitive abilities. *Page 15 
 BEST INTERESTS {¶ 17} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.
 {¶ 18} In this case, competent and credible evidence supports the trial court's finding that awarding permanent custody to ACCS serves the children's best interests. First, the children's interaction and interrelationships with their mother and with others supports the trial court's best interests finding. While the children clearly love their mother and desire to live with her, while living with their mother they witnessed and suffered domestic violence. The trial court found that the oldest child seemed to be the most *Page 16 
damaged and that all the children are engaged in psychological counseling. Specifically, the oldest child has been diagnosed with Post Traumatic Stress Syndrome and Major Depressive Disorder. The record reveals that each of the children have benefited from their foster care placements, including the oldest child, who was eventually placed in therapeutic foster care as a result of her verbally and physically aggressive behavior. Further, the ACCS caseworker testified that while Appellant never missed her visitations with the children, she did not display appropriate parenting skills and failed to intervene at appropriate times with regard to their behavior. The case plans contained in the record also indicate that despite the provision of multiple types of community services to Appellant, Appellant was unable to implement new parenting techniques without being prompted.
 {¶ 19} Second, regarding the children's wishes, as the trial court noted, the children desire to live with their mother. However, the guardian ad litem recommended that the court award ACCS permanent custody of the children. Third, with respect to the children's custodial history, the evidence reveals that while the children had been in the care and custody of their parents until they were removed on December 7, 2006, since that time they had been in continuous custody of ACCS. Fourth, the children need a permanent, secure home, which Appellant cannot provide. The record *Page 17 
reveals that Appellant's limited cognitive abilities impede her ability to care for and protect her children, as well her ability to meet their special educational and behavioral needs. When considering this factor, the trial court specifically noted that Appellant had been diagnosed with the following conditions: (1) Alcohol Dependency; (2) Partner Relational Problems; (3) Parent-Child Relational Problems; (4) Neglect of a Child (all Axis I diagnosis)[2]; (5) Dependent Personality Disorder; and (6) Mild Mental Retardation (Axis II diagnoses). Finally, the trial court found that R.C. 2151.414(E)(11) did not apply.
 {¶ 20} Thus, a balancing of the best interests factors shows that awarding permanent custody to ACCS would serve the children's best interests. While Appellant undoubtedly loves her children, her limited cognitive ability and attendant inability to recognize or protect her children from harm, coupled with her alcohol addiction, renders her unable to properly care for them.
 {¶ 21} In support of her argument that the trial court solely relied on her cognitive ability in terminating her parental rights, Appellant relies on In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. However, Appellant's reliance on this case is misplaced. In that case, the Supreme *Page 18 
Court of Ohio held: "When determining the best interest of a child under R.C. 2151.414(D) at a permanent-custody hearing, a trial court may not base its decision solely on the limited cognitive abilities of the parents." Id. at syllabus. The parents in D.A. had low IQs, which hampered their ability to function as parents. No evidence existed that the parents were unable to provide an adequate permanent home for the child, to care for and protect the child from harm, or that the parents of the child had alcohol and substance issues which they failed to remedy. Further, no evidence existed in that case that the child had been verbally or physically abused as a result of the violence of one parent and the failure to protect the child from harm by the other parent.
 {¶ 22} In D.A., the court determined that the trial court did not appropriately consider the best interests factors, but instead relied solely upon the parents' limited cognitive abilities. Thus, theDA. court held that the lower court could not terminate the parental rights based solely upon the parents' limited cognitive abilities. However, the court noted other cases that terminated a parent's rights based upon limited cognitive abilities, observing that in those cases, "objective evidence existed to show that the statute was satisfied." Id. at ¶ 37, citing In re C.E., Butler App. Nos. CA2006-01-015 and CA2006-02-024, 2006-Ohio-4827 (the mother needed *Page 19 
constant supervision and prompting to meet child's basic needs and had inadequate housing); In re King, Fairfield App. No. 05 CA 77,2006-Ohio-781 (the mother consistently relied on others to meet many of her basic needs and lost her housing).
 {¶ 23} Unlike in D.A., here, ACCS presented objective evidence, other than Appellant's cognitive abilities, to show that awarding ACCS permanent custody would serve the children's best interests. Appellant's cognitive status impeded her ability to care for her children in that she was unable to recognize or protect her children from harm. As inC.E. and King, supra, the evidence presented by ACCS indicated that Appellant would require excessive community support in order to care for her children. ACCS also presented evidence that Appellant required prompting and did not seem to intervene appropriately when the children displayed inappropriate behavior. Further, the children in the present case all require counseling and additional services as a result of their behavioral problems and cognitive delays, unlike D.A. Additionally, as opposed to the trial court in D.A., in this case the trial court appropriately considered all of the best interest factors, which have been discussed, supra, and did not simply rely upon Appellant's cognitive ability. *Page 20 
 {¶ 24} Consequently, the record contains competent, credible evidence to support the trial court's finding that awarding ACCS permanent custody serves the children's best interests. Accordingly, we overrule Appellant's assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 21 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.
[2] During the hearing held on March 14, 2008, Karis Mason, a professional clinical counselor employed with Mid-Ohio Psychological Services, Inc., testified that Axis I diagnoses encompass mental disorders and Axis II diagnoses encompass cognitive and personality disorders. *Page 1