DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Angela K. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Mother is the natural mother of M.A., born March 31, 2006. M.A.'s father is not a party to this appeal. M.A. spent several weeks in the hospital following her birth due to her premature birth. Mother admittedly used alcohol and cocaine while she was pregnant with M.A. Because CSB apparently believed that Mother was no longer using drugs or alcohol after the child's birth, M.A. was *Page 2 
released from the hospital into her care. A few days after M.A. left the hospital, however, CSB received drug test results that revealed that Mother continued to use illegal drugs after M.A.'s birth. Consequently, M.A. was removed from Mother's home due to concern about Mother's long-term substance abuse problem and its impact on her ability to parent her newborn child. CSB later received information from Mother's family that Mother, who was then in her mid-thirties, had been abusing drugs and alcohol since she was a teenager.
 {¶ 3} Shortly after her removal from the home, M.A. was placed with her maternal aunt. During the next several months, Mother failed to make any progress on her case plan. She refused to participate in residential substance abuse treatment and was terminated from an outpatient treatment program due to noncompliance. Mother did not submit urine samples for testing as required, and the few samples that she did submit all tested positive for alcohol. Mother failed to complete parenting classes, did not seek any mental health treatment, and did not obtain stable employment or housing. Mother also failed to visit M.A. consistently.
 {¶ 4} On October 30, 2006, CSB filed a motion for permanent custody of M.A. Following a hearing on the motion, the trial court found that M.A. could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody was in the child's best interest. Mother appeals and raises one assignment of error. *Page 3 
 Assignment Of Error "The trial court's award of permanent custody of [M.A.] to [CSB] because there was clear and convincing evidence that the [child] could not be placed with [her] parent within a reasonable time and that an award of permanent custody was in the best interest of the [child] is not supported by clear and convincing evidence and was contrary to law."
 {¶ 5} Mother contends that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Mother challenges the trial court's findings on both prongs of the permanent custody test.
 {¶ 6} The trial court found that the first prong of the test was satisfied because M.A. could not be placed with either parent within a reasonable time or should not be placed with them. See R.C. 2151.414(E). The trial court supported this finding with two different factors under R.C. 2151.414(E), that Mother had *Page 4 
demonstrated a lack of commitment toward M.A. by failing to regularly visit the child and that she had failed to substantially remedy the conditions that led to M.A.'s removal from the home. See R.C.2151.414(E)(4); R.C. 2151.414(E)(1).
 {¶ 7} Each of these findings was supported by ample evidence presented at the hearing. The trial court found that Mother had demonstrated a lack of commitment to M.A. because she had not visited the child since August, which was six months prior to the permanent custody hearing, and Mother does not dispute that finding. M.A. was only 11 months old at the time of the hearing and had spent almost her entire life outside of Mother's custody, yet Mother had failed to visit her for six of those 11 months. The trial court reasonably concluded that Mother demonstrated a lack of commitment to M.A. by failing to have any contact with her for half of her short life.
 {¶ 8} Although it is not necessary for this Court to also address the propriety of the trial court's finding under R.C. 2151.414(E)(1), as the trial court was required to find only one factor under R.C. 2151.414(E) to support its decision, there was ample evidence to support the trial court's finding that Mother had failed to remedy the conditions that had caused the removal of M.A. from her home. See R.C. 2151.414(E)(1). Both the maternal aunt and the maternal grandmother testified that Mother has a long-standing problem with substance abuse. The maternal grandmother testified that Mother, who was then 36 years old, had been abusing drugs and alcohol for the past 18 years. Mother had entered *Page 5 
treatment programs in the past, but had never completed any of them. The maternal grandmother testified that she no longer provided financial support for Mother because Mother refused to get help for her problem. She further testified that she once gave Mother a used vehicle so she would have transportation, but later discovered that Mother had exchanged the vehicle for drugs. The grandmother indicated her belief that Mother's drug and alcohol problem prevented her from parenting M. A.
 {¶ 9} Long-term residential treatment had been recommended for Mother, due to the severity of her substance abuse problem, but she refused to enter an inpatient program. Mother began outpatient treatment during the case plan period, but was later terminated due to noncompliance. Mother also failed to undergo weekly drug screening as required by her case plan. During the nine-month case plan period, Mother submitted a total of six urine samples and all of them tested positive for alcohol.
 {¶ 10} Therefore, both of the trial court's findings under R.C.2151.414(E) were supported by the evidence at the hearing. Consequently, the trial court was required by R.C. 2151.414(E) to find that M.A. could not be placed with either parent within a reasonable time or should not be placed with them.
 {¶ 11} The trial court also found that permanent custody to CSB was in the best interest of M.A. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors: *Page 6 
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[1].
 {¶ 12} The interaction and interrelationship between Mother and M.A. was very limited. Although Mother asserts that there was a significant parent-child bond here, the record demonstrates otherwise. When M.A. was born, she spent two weeks in the hospital and Mother visited her only sporadically and briefly. M.A. had lived outside of Mother's custody for her entire life except for the few days after she was released from the hospital. M.A. was only 11 months old at the time of the permanent custody hearing and had not even seen her Mother during the six months prior to the hearing.
 {¶ 13} M.A. had spent most of her life in the home of her maternal aunt and was thriving there. Witnesses testified that the home was appropriate, there was a *Page 7 
strong bond between M.A. and her aunt, and the aunt was interested in adopting M.A.
 {¶ 14} M.A. was too young to express her wishes, so the guardian ad litem spoke on her behalf. The guardian opined that permanent custody was in the best interest of M.A. She testified that she was opposed to extending temporary custody because Mother had done virtually nothing during the past nine months to work toward reunification with M.A.
 {¶ 15} The 11-month custodial history of M.A. had been spent almost exclusively with her maternal aunt and she was doing well there. M.A. had lived with her mother for only a period of days. During the months that M.A. lived outside the home, Mother had done almost nothing to work toward reunification. Mother did not complete drug and alcohol treatment or parenting classes, she was unemployed and lacked stable housing, and she had not addressed CSB's concerns about her mental health.
 {¶ 16} There was also evidence that M.A. was in need of a legally secure permanent placement and that her parents were not able to provide her with a suitable home and there were no suitable relatives willing to take legal custody of her. Mother maintains that, because the maternal aunt was willing to adopt M.A., the trial court should have required her to take legal custody of M.A. because it was a less drastic alternative placement. *Page 8 
 {¶ 17} The maternal aunt had not moved for legal custody, however, and she testified at the permanent custody hearing that she was not willing to take legal custody because Mother would retain visitation rights and she and Mother did not have an amicable relationship. The aunt gave several examples of situations in which Mother had caused problems for her and explained that Mother's visits with M.A. were moved from her home to the CSB visitation center due to their strained family relationship. The maternal grandmother corroborated much of the maternal aunt's testimony, agreeing that Mother interfered with the aunt's ability to care for M.A.
 {¶ 18} Mother fails to cite any authority that would allow the trial court to grant legal custody to a relative who had not requested, and even indicated her opposition to, such a placement. R.C. 2151.353(A)(3), as amended September 21, 2006, requires a written request by or on behalf of the legal custodian and, if the request is made by one other than the proposed legal custodian, a detailed "statement of understanding" of the legal custody placement signed by the proposed legal custodian. Because the maternal aunt had filed no motion for legal custody, nor had any party requested a legal custody placement with an accompanying statement of understanding, the trial court had no authority to consider placing M.A. in the legal custody of the aunt. *Page 9 
 {¶ 19} Given the evidence before the trial court, it reasonably concluded that permanent custody was in the best interest of M.A. The assignment of error is overruled.
 {¶ 20} The assignment of error is overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed to Appellant. *Page 10 
WHITMORE, J. DICKINSON, J. CONCUR
Court of Appeals of Ohio, Ninth Judicial District
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 1