DECISION AND JOURNAL ENTRY
{¶ 1} Karaline C. ("Mother") and Chad C. have separately appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to five minor children, J.B., K.C., C.C., J.B., J.M., and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Mother, at age 22, is the unmarried parent of five children, J.B. born August 30, 2001, J.B., born July 8, 2003, K.C., born June 24, 2005, C.C., born April 11, 2006, and J.M., born June 27, 2007, all of whom were removed from her care. Chad C. is the father of K.C. and C.C. and he has separately appealed. Jack B., the father of the two oldest children, has not *Page 2 
appealed from the trial court judgment. Tristan W. was named as the putative father of the youngest child, but paternity was never established.
 {¶ 3} CSB initially became involved with the family in early April 2006 after Chad punched out a window at Mother's apartment. The police were called and they, in turn, contacted CSB. CSB eventually entered into a voluntary case plan with Mother based on the unsanitary nature of the apartment. Her single goal was to keep a clean home. The children were removed overnight and returned. In addition, Mother was charged with misdemeanor child endangering and was placed on probation. Subsequently, C.C. was born on April 11, 2006.
 {¶ 4} On or about June 21, 2006, Mother left the children with Chad while she went to a neighbor's residence to make a telephone call. She had put infant C.C. down for a nap. When she returned, she found C.C. on the floor and injured. She took him to the hospital, where C.C. was diagnosed with multiple injuries, both old and new, including a laceration on his lower left forehead; extensive bilateral retinal hemorrhages; bite marks to the abdomen, left knee and left foot; two subdural hematomas of differing ages, nearly healed fractures of four ribs; two fractures of the right arm; two fractures of the right leg; and two fractures of the left leg. The police were called and CSB initiated this case. Chad was subsequently convicted of felony child endangering, and, at the time of the permanent custody hearing, was serving a four-year sentence for that crime.
 {¶ 5} As established through stipulated facts, Mother originally told hospital personnel that the child scooted off the bed, but later admitted to police that C.C. was unable to roll over or move himself. She claimed the old injuries were from a car accident in May. Four-year-old J.B. told hospital personnel that Chad dropped the infant on the floor and injured him because he was "getting on our nerves." J.B. also reported that Chad had hit the children with a belt. When CSB *Page 3 
workers went to remove the other children from the home, the children were found to have poor hygiene, the home was found to be in deplorable condition, with trash and clothes all over the floor and limited food available. The home was infested with gnats, and there were no appropriate sleeping arrangements for the children.
 {¶ 6} The next day, CSB filed a complaint in juvenile court, alleging that C.C. was abused, neglected, and dependent, and alleging that the other three children were dependent. In due course, all four children were adjudicated as alleged and were placed in the temporary custody of CSB. The trial court found that C.C. was injured while in the care of his father, Chad, and that his injuries were inconsistent with the explanations provided by Mother and Chad. The trial court also found that Mother failed to maintain a safe home environment and that C.C.'s siblings were in danger of being abused or neglected. Subsequently, when Mother's fifth child was born, CSB initiated another action, based upon his dependency. J.M. was later adjudicated dependent and was also placed in the temporary custody of CSB.
 {¶ 7} The case plan adopted by the trial court required Mother to address: (1) poor housekeeping skills, obtain appropriate housing, and obtain a steady source of income; (2) limited parenting skills by participating in Help Me Grow and/or a structured parenting class; (3) mental health needs, based on her involvement in a violent relationship and possible depression. Chad was required to address: (1) limited parenting skills; (2) paternity and support; and (3) mental health and anger issues.
 {¶ 8} Eventually, CSB moved for permanent custody of all five children. Following a hearing, the trial court granted CSB's motion, terminating parental rights and placing the children in the permanent custody of the agency. Mother has timely appealed and has assigned one error for review. Chad has separately appealed. In lieu of a merit brief, his attorney filed a *Page 4 
brief in accordance with Anders v. California, 386 U.S. 738 (1967), in which he asserted that there were no errors occurring at trial meriting reversal on Chad's behalf. Chad's attorney also filed a motion to withdraw from representation of his client because, after a review of the record, he believed any appeal would be frivolous. Chad did not file a brief in response to his attorney's filing.
 II. Mother's Assignment of Error "THE TRIAL COURT'S JUDGMENT GRANTING PERMANENT CUSTODY TO SUMMIT COUNTY CHILDREN SERVICES BOARD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} Mother has argued that the trial court erred in finding that the evidence supported an award of permanent custody. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 10} The trial court found that the four oldest children had been in temporary custody for at least 12 of the prior 22 months, and that the youngest child, who had not been in temporary custody for that length of time, could not be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a). In support of the latter finding, *Page 5 
the trial court found that Mother had failed to remedy the conditions which caused removal. See R.C. 2151.414(E)(1). In addition, the trial court found that the youngest child had been abandoned by putative father Tristan W. and by John Doe. See R.C. 2151.414(B)(1)(b) and R.C. 2151.011(C). The trial court also concluded that it was in the best interests of all five children to be placed in the permanent custody of CSB. Mother challenges, as being unsupported by the evidence, the best interest finding regarding all five children and the finding that the youngest child could not or should not be placed with either parent within a reasonable time.
 {¶ 11} In consideration of the first prong of the permanent custody test, this Court notes that Mother has not contested the finding that the four oldest children had been in temporary custody for 12 of the prior 22 months, and the record supports that finding. As to the fifth child, the evidence supports the finding that Mother failed to remedy the conditions which caused removal. See R.C. 2151.414(E)(1). Mother has consistently remained dependent on others for her housing, has failed to maintain stable employment, and has terminated her counseling which was intended to address the domestic violence in her past relationship. Mother has not maintained stable housing at any time during this case, having moved at least eight times over the course of the last two years. Moreover, there is no evidence as to when Mother could reasonably expect to obtain appropriate housing.
 {¶ 12} Despite having lived in an abusive relationship and failing to protect her children from abuse, Mother testified that she saw no need to deal with relationship issues or the effects of domestic violence. She stated that she did not believe that domestic violence counseling for her would benefit her children. At the same time, she acknowledged that she was currently living with a friend and was unable to provide a home for her children. Therefore, she asked the court to place her children with relatives until she is able to obtain housing. *Page 6 
 {¶ 13} None of the fathers is in a position to provide appropriate care to the children. Jack B. was incarcerated at the time of the permanent custody hearing and had been "in and out" of prison during the case. He has not had any contact with his children for a period of at least 90 days and was found to have abandoned them. See R.C. 2151.414(E)(10). Tristan W., the putative father of J.M., has also not had any contact with that child for a period of at least 90 days, and was similarly found to have abandoned him. Id. Chad is serving a four year sentence for child endangering due to the injuries he inflicted upon C.C. and will not be released for a period of more than eighteen months after the permanent custody hearing. See R.C. 2151.414(E)(5) and R.C. 2151.414(E)(12). All three men have criminal records involving domestic violence, child abuse, and/or drug issues. Accordingly, the evidence supports the finding of the trial court on the first prong of the permanent custody test.
 {¶ 14} Turning to the second prong of the permanent custody test, this Court notes that in determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5). *Page 7 
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 15} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. In re D.A.,113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 12. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 16} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. R.C. 2151.414(D)(1). There was evidence before the trial court that the two oldest children have a close bond with Mother. The two oldest children also share a close bond with each other and the three youngest children share a bond among themselves. All the children have bonded with their foster parents and have flourished in their care. The foster parents are a retired couple and are not in a position to adopt the children, but they are willing to care for the children until a permanent placement can be found. There is little evidence of a bond between the children and any other relative. There was either no relationship or an inappropriate relationship with the fathers.
 {¶ 17} Mother attended two sets of parenting classes addressing different stages of child development and has improved in her ability to manage five children at a time. She admits that she is currently unable to provide a home for her children. In addition, Mother has not fully addressed her history of violent relationships and failure to protect her children through *Page 8 
counseling. Mother testified that Chad had been possessive and violent towards her, that she had been unable to keep Chad from striking her children, that she was afraid to leave him or to call the police because he threatened to kill her if she left him, and that she was even too frightened to talk to the CSB workers about her fears. Nevertheless, Mother stopped attending counseling, believing she did not need it, claiming it was not helpful, and testifying that she did not believe domestic violence counseling would result in any benefit to her children.
 {¶ 18} Aimee Koosh, counselor for the two oldest children, testified that both of those children talked to her about being physically abused by Chad. The children had problems with security and safety, and initially exhibited aggression, anxiety, and fear. Whenever the children were confronted by any sort of discipline from the foster parents, they became frightened and upset, fearing that they would be hit, as had happened with Chad. They occasionally mentioned that Mother had attempted to protect them and said they wanted to go home to be with her. Ms. Koosh stated that the children should continue with counseling, regardless of the outcome of this proceeding, and indicated that the children needed structure, regular supervision, boundary maintenance, and reassurance.
 {¶ 19} James Athans, Ph.D., testified that he conducted seven counseling sessions with Mother from July 2007 to November 2007. At that point, Mother stopped attending counseling sessions, and she was officially terminated by the agency in March 2008. Dr. Athans stated that Mother did not complete counseling and he expressed continuing concern with Mother's choice of relationships and the fact that she put her children at risk through those relationships. Mother said she stopped attending counseling sessions because she did not feel the sessions were worthwhile, though she did not convey that to her caseworker, who repeatedly asked her to resume counseling. *Page 9 
 {¶ 20} Octavia Durst, the CSB caseworker assigned to this case, testified that Mother always expressed a willingness to complete her case plan, but that she has been unable to follow through with the important component of stable housing. Mother was evicted from her AMHA housing due to the damages caused by Chad. She then moved eight times over the next two years, as she traveled between the homes of relatives and friends. At the time of the hearing, she was on two waiting-lists for housing, but did not know how long the wait would be.
 {¶ 21} In addition, Mother's employment history was sporadic. She had worked for a half-dozen different employers, leaving some jobs because she lost her transportation with a friend or relative, and losing others because of her criminal record or because she had to serve a jail sentence for her probation violation. Mother obtained her latest job just three weeks before the permanent custody hearing.
 {¶ 22} The caseworker stated, in sum, that Mother did make an effort, but she still did not have housing and has not demonstrated that she is able to provide for the children long-term. Ms. Durst testified that the children are doing well in the home of a retired couple, who are unable to adopt them, but are willing to keep the children until a permanent home can be located. The children have no impairments and are adoptable. She testified that adoption is in their best interests in order to provide them with stability and permanency.
 {¶ 23} Chad took the stand and testified that he had been incarcerated a great deal from the age of 13 to the present. He admitted to domestic violence with Mother and admitted injuring her. He conceded that he was not able to assume custody of his two children, but believed that any of several named relatives were willing to take some or all of the children. None of his relatives filed a motion for legal custody. Absent such a motion, the trial court had *Page 10 
no authority to consider placing the children in the legal custody of a relative. R.C. 2151.353(3). See, also, In re M.A., 9th Dist. No. 23690,2007-Ohio-4655, at ¶ 18.
 {¶ 24} The two oldest children expressed a desire to return to their mother's custody. According to the guardian ad litem, however, the second oldest child explained that the reason for his opinion on that point was that she promised him "a Spiderman bed." The other children were too young to express their desires, and the guardian ad litem recommended that the motion for permanent custody should be granted.
 {¶ 25} At the time of the permanent custody hearing, the ages of the children were seven, five, four, two and one. The four oldest children had been in custody for more than two years and the youngest had been in custody for all but a few days of his life. The children resided in foster homes throughout the case.
 {¶ 26} There was evidence before the trial court that all of the children need a legally secure permanent placement. Mother has been unable to maintain stable employment or housing for her children and is still unable to do so. The fathers are not suitable custodians. On appeal, Mother has argued that CSB refused to consider three maternal relatives as possible placements for the children. None of those relatives filed a motion for legal custody, and the trial court may not, therefore, award legal custody to them. R.C. 2151.353(3). See, also,MA, at ¶ 18.
 {¶ 27} Technically, Mother was not seeking an award of legal custody for her relatives, but only a temporary placement until she secured housing. The matter before the trial court, however, was CSB's motion for permanent custody, and the court was hearing the motion at a point in time when four of the children had already been in foster care for more than two years. The fifth child had been in foster care virtually his entire life. There was testimony before the trial court that the children needed permanency and that a grant of permanent custody was the *Page 11 
only way to achieve that permanency. Mother was not able to state with assuredness when — if ever — she might obtain suitable housing. A temporary placement with relatives offered none of the protections of legal custody and no assurance of permanence. At this point, a placement that merely delayed the ability of these children to enjoy a legally secure permanent placement was not in their best interests.
 {¶ 28} The fifth best interest factor permits consideration of the fact that three of the children, J.B, J.B, and J.M., have been abandoned by their fathers. See R.C. 2151.414(E)(10).
 {¶ 29} Christine Brown, the guardian ad litem, recommended granting the motion for permanent custody. She reasoned that Mother had two years to obtain stable housing and still had not done so. In fact, Mother said that she was still not in a position to take the children at the time of the hearing. The guardian ad litem expressed concern that C.C. was injured while in Mother's care. At the time of C.C.'s injury, Mother knew she was in a relationship with a man who was violent and, yet, she failed to protect her child. In addition, Mother has been in relationships with other men with extensive criminal histories. The guardian ad litem was also concerned that Mother had not addressed these issues in counseling, so that she might become a stronger person and stay out of such relationships in the future. Despite the fact that mother has stayed out of violent relationships during this case, the guardian ad litem remained concerned that Mother might again have a relationship where she is unable to protect her children.
 {¶ 30} Mother has argued that it would be traumatic to separate the two oldest children from each other. The trial court admitted that another move will be disruptive, but found that the children will ultimately benefit from permanency rather than continued uncertainty. The counselor for the two oldest children testified that they are in need of supervision, boundaries, reassurance and stability, and the trial court found that these basic needs apply to the younger *Page 12 
children as well. None of the parents has demonstrated the capacity to provide what the children need on a consistent basis. The guardian ad litem explained that she believed the children are very adoptable. They have no special needs and are young. Adoption is the only means available for permanency for these children and would not be possible unless the motion is granted.
 {¶ 31} Upon review, the record demonstrates that there was ample evidence before the trial court from which it could conclude that permanent custody was in the children's best interests. Consequently, the trial court did not err in terminating Mother's parental rights and placing the five children in the permanent custody of CSB. Mother's sole assignment of error is overruled.
 Chad's Possible Issues for Review {¶ 32} Chad, the father of K.C. and C.C., has also appealed from the judgment of the trial court. His attorney has filed an Anders Brief with this Court, asserting that there are no issues justifying reversal of the trial court judgment. See Anders v. California, 386 U.S. 738 (1967). He has submitted two possible issues for the consideration of this court: (1) whether the judgment is against the manifest weight of the evidence and (2) whether Chad was prejudiced by the ineffective assistance of trial counsel.
 {¶ 33} At trial, Chad did not attempt to obtain custody himself, but rather argued that his children should be placed with one or more of his relatives. None of his relatives filed a motion for legal custody, nor did any of his relatives have a history of involving themselves in the lives of the children. In addition, there is no evidence of ineffective assistance of counsel. Furthermore, even if there were, there is not a reasonable probability that, but for counsel's errors the result of the trial would have been different because neither Mother nor Chad were in a *Page 13 
position to assume custody and no other person had requested legal custody. This Court has carefully reviewed the record and agrees that there are no issues which would support reversal of the judgment of the trial court as to Chad
 III. {¶ 34} Mother's assignment of error is overruled. None of the issues presented for review by Chad's attorney are meritorious. Accordingly, Chad's appeal is without merit and wholly frivolous underAnders, 386 U.S. 738. Counsel's motion to withdraw is granted. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellants. *Page 14 
DICKINSON, P. J. BELFANCE, J. CONCUR *Page 1