[Cite as *In re J.H.*, 2014-Ohio-3108.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

IN THE MATTER OF:      :
        :
   J.H., Jr.            :     Case No.     14CA4
        :
        :
        :     <u>DECISION AND JUDGMENT</u>
        :     <u>ENTRY</u>
        :
        :     **Released: 07/10/14**

<u>APPEARANCES:</u>

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

Laina Fetherolf, Prosecuting Attorney, and Ann Allen McDonough, Assistant Prosecuting Attorney, Logan, Ohio, for Appellee.

McFarland, J.

{¶1} This is an appeal by Appellant of the trial court's decision awarding permanent custody of her biological child, J.H., Jr., to appellee, South Central Ohio Job and Family Services, formerly known as Hocking County Children Services. Appellant argues that the trial court erred by determining that the evidence clearly and convincingly shows that awarding appellee permanent custody is in the child's best interest, because the evidence fails to show that the child could not achieve a legally secure permanent placement without granting appellee permanent custody. Appellant contends that she would be able to provide a legally secure permanent

placement for the child after her release from jail in July 2014 or her father could have provided a legally secure permanent placement on either a temporary or permanent basis. Clear and convincing evidence shows that appellant is incarcerated and cannot provide the child with a legally secure permanent placement and, by her own admission, would not be able to provide the child with a legally secure permanent placement for at least six months after her July 2014 release. Additionally, R.C. 2151.414(D)(1)(d) did not require the trial court to determine whether appellant's father could provide a legally secure permanent placement for the child before the court could award appellee permanent custody. Accordingly, we reject appellant's argument that clear and convincing evidence fails to support the trial court's finding that the child could not achieve a legally secure permanent placement without a grant of permanent custody and that the trial court's decision to award appellee permanent custody of the child was against the manifest weight of the evidence. Thus, we overrule appellant's assignment of error and affirm the trial court's judgment.

## I. FACTS

{¶2} On March 26, 2012, appellant gave birth to the child, and both she and the child tested positive for cocaine. Appellant admitted that she had used methadone, Percocet, and cocaine during the last three months of her pregnancy. Appellee subsequently filed a complaint that alleged the child is an abused and

dependent child, and when the child was approximately two weeks old, the trial court placed him in appellee's temporary custody. On July 23, 2012, the court adjudicated the child a dependent child and dismissed the abuse allegation.

{¶3} On October 30, 2013, appellee filed a permanent custody motion. Appellee argued that awarding it permanent custody of the child would be in the child's best interest because (1) the child had been in the same foster home since the child was one month old, (2) the child bonded with the foster mother, (3) the child lacked a bond with appellant and has seen appellant only three times since his birth, (4) appellant had been unable to reunify with the child during the eighteen months before appellee filed the permanent custody motion, and (5) a suitable relative placement does not exist. Appellee asserted that it considered placing the child with appellant's father but deemed appellant's father unsuitable "due to drug use and criminal history." Appellee further considered placing the child with appellant's aunt, but the aunt stated that she could not take the child.

{¶4} On January 23, 2014, the guardian *ad litem* filed a report. The guardian stated that she visited both the foster home and appellant's father's home and found both to be safe and appropriate. However, the guardian *ad litem* did not believe that placing the child in appellant's father's home would serve the child's best interest due to "the current impact and foreseeable future impact of

[appellant]'s drug use and frequent incarcerations on her child[]."  The guardian *ad litem* further explained:

> "The GAL recommends that [the child] not be placed in [appellant's father's] home.  This recommendation is made in light of [the child]'s strong bond with foster mother that began shortly after his birth and that foster mother will adopt [the child] if given that opportunity.  In addition, [the child] may still not be 'out of the woods' in terms of the effect that [appellant]'s drug use during her pregnancy had on [the child].  The full impact will only be known as he grows and develops.  This G[AL] concludes that these potential future challenges create a particular need for [the child] to have a legally secure permanent placement as early in his life as is possible."

The guardian *ad litem* thus recommended that the court award appellee permanent custody of the child.

{¶5}  Later, during the permanent custody hearing, the guardian *ad litem* stated:  "[G]iven [appellant]'s history and her inability to stay sober for any extended period of time, it seems unlikely that she will ultimately succeed in [recovering].  And in addition, the time that it would take, a minimum of a year for her to be released from jail and complete treatment and then to find out whether or not she can succeed outside of that structured environment.  In the meantime [the child] is in a foster home where he is fond of his foster mother."

{¶6}  On February 3, 2014, the trial court granted appellee permanent custody of the child.  The court first found that the child was adjudicated dependent on July 17, 2012, and was in appellee's temporary custody from April 5, 2012 through October 30, 2013.  The court thus determined that the child had been

in appellee's temporary custody for at least twelve months out of a twenty-two month consecutive period, in accordance with R.C. 2151.414(B)(1)(d). The court also found that the child cannot be placed with appellant or any other family member within a reasonable period of time and that the child should not be placed with appellant. The court found that the child should not be placed with appellant due to her repeated incarceration, her failure to complete substance abuse treatment/counseling, her failure to remain sober, and her failure to abstain from illegal drug use. The court determined that appellant "has not demonstrated a willingness nor ability to care for, nurture and protect her child."

{¶7} The court next considered the following factors when evaluating the child's best interest: (1) the child had been in foster care since his birth; (2) appellant had not regularly visited or maintained contact with the child; and (3) the child was not competent to express his wishes, but the guardian *ad litem* believed that awarding appellee permanent custody would serve the child's best interest. The court further determined that "the child can only have a legally secure permanent placement by a grant of permanent custody to [appellee]."

{¶8} The court also considered R.C. 2151.414(E)(1), (2), (4), (9), (11), (13), (14), and (15). The court observed the following: (1) appellee made reasonable efforts to reunify appellant with the child during the time appellant was not incarcerated, but appellant's "[p]arenting deficiencies and chemical dependency

required foster placement of the child;" (2) appellant "has a history of chronic substance abuse and incarceration" and she "has demonstrated an inability to refrain from substance abuse and has not followed through with AOD counseling and/or treatment;" (3) appellant "has not been able to adequately care for herself, including maintaining housing and attending Court hearings;" (4) appellant has "AOD addiction and abuse issues," and she failed "to seek and obtain counseling for those problems;" (5) appellant's parental rights were terminated with respect to one of her two other children, and her father has legal custody of the other child; (6) appellant has a history of repeated incarceration; (7) appellant failed to visit or pay support for the child while in foster care; and (8) appellant's past history indicates that "reunification with [appellant] will result in continued neglect and/or dependency of the child."  The court thus terminated appellant's parental rights and awarded appellee permanent custody of the child.

## II.  ASSIGNMENT OF ERROR

{¶9}  Appellant timely appealed the trial court's judgment and raises one assignment of error:

> The trial court erred in finding that clear and convincing evidence supports a finding that granting permanent custody is in the best interest of [the child].

## III.  ANALYSIS

{¶10} In her sole assignment of error, appellant essentially argues that the trial court's judgment is against the manifest weight of the evidence, because clear and convincing evidence does not support the court's decision that awarding appellee permanent custody serves the child's best interests. Specifically, appellant argues that clear and convincing evidence fails to support the trial court's finding that the child cannot obtain a legally secure permanent placement without granting permanent custody to appellee. Appellant asserts that she would be able to provide the child with a legally secure permanent placement upon her release from prison, or alternatively, her father can provide a legally secure placement for the child on either a temporary or permanent basis. Appellant contends that the court's finding that the child should not be placed with appellant's father is unsupported by clear and convincing evidence. She observes that the court cited appellant's father's "lengthy history of Domestic Violence and Criminal Convictions," but asserts that "the record contains no admissible evidence of [her father]'s prior legal involvement."

{¶11} Appellant also disputes the court's findings that she failed to assist in identifying the child's biological father or that she failed to pay child support while the child was in foster care.

A.  STANDARD OF REVIEW

{¶12}  A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re R.S.,* 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

*Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶13} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court """"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" *Eastley* at ¶20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord In re Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶23–24.

**{¶14}** The essential question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶43.  "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

*In re Estate of Haynes,* 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986).

**{¶15}** In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of Lay,* 25 Ohio St.3d 41, 42–43, 495 N.E.2d 9 (1986).  *Cf. In re Adoption of Masa,* 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has

been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence"). Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.,* --- Ohio App.3d ---, 2013–Ohio–3588, 997 N.E.2d 169, ¶62 (4th Dist.).

{¶16} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶17} Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian,* 4th Dist. Athens No. 04CA 10, 2004–Ohio–3146, ¶7. As the Ohio Supreme Court long-ago explained: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

## B. PERMANENT CUSTODY PRINCIPLES

{¶18} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed .2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *D.A.* at ¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re*

*Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best interest demands such termination.  *D.A* . at ¶11.

{¶19} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

## C.  PERMANENT CUSTODY FRAMEWORK

{¶20} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶21} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

{¶22} In the case at bar, appellant does not challenge the trial court's R.C. 2151.414(B)(1) finding.  Thus, we do not address it.

## D.  BEST INTEREST

{¶23} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the

child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶24} Here, the only best interest factor appellant challenges concerns the trial court's finding regarding the child's need for a legally secure permanent placement.

{¶25} R.C. 2151.414(D)(1)(d) requires the trial court to consider "[t]he child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody to the [children services] agency." Appellant argues that the evidence fails to support the trial court's finding that the child cannot achieve a legally secure permanent placement without granting appellee permanent custody. We do not agree.

{¶26} The child has been in appellee's temporary custody since he was a newborn, and at the time of the permanent custody hearing, he was almost two years old. During that time, appellant was unable to provide the child with a legally secure permanent placement, mainly due to her drug abuse and incarceration. At the time of the permanent custody hearing, appellant's expected release date was July 2014. Thus, appellant would not be able to provide the child

with a legally secure permanent placement for at least six months following the date of the permanent custody hearing, presuming that she could obtain custody of the child immediately upon her release from jail, which even appellant recognized was not likely. Appellant admitted that she would need at least six months after her release to attempt to stabilize her life so as to take custody of the child. As appellee's witnesses pointed out, however, appellant has twice completed substance abuse programs yet still relapsed. Thus, appellee asserted that appellant's future ability to refrain from substance abuse was questionable. Consequently, when, if ever, appellant would be able to provide a legally secure permanent placement for the child is unknown. The trial court was not required to deny the child the permanency that he needs, especially at a young age, in order to provide appellant even more chances to prove that she can provide a legally secure permanent placement for the child. To deny appellee permanent custody would only prolong the child's uncertainty. Even though the child has remained in the same foster home since appellee acquired temporary custody, there is no guarantee that the child would remain in this same foster home until appellant demonstrates that she can provide the child with a legally secure permanent placement. Instead, continuing the child in appellee's temporary custody would place the child in limbo with no guarantee of a legally secure permanent placement. We do not believe that the trial court was required to experiment with the child's best interest

in order to permit appellant to prove that she will be able to regain custody of the

child. *In re C.T.L.A.*, 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550, ¶51.

> "' * * * [A] child should not have to endure the inevitable to its great
> detriment and harm in order to give the * * * [parent] an opportunity to
> prove her suitability. To anticipate the future, however, is at most, a difficult
> basis for a judicial determination. The child's present condition and
> environment is the subject for decision not the expected or anticipated
> behavior of unsuitability or unfitness of the * * * [parent]. * * * The law
> does not require the court to experiment with the child's welfare to see if he
> will suffer great detriment or harm.'"

*In re Bishop* (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838, quoting *In re East*

(1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346. We therefore disagree with

appellant's suggestion that the court should have considered a temporary

arrangement pending appellant's unpredictable ability to regain custody of the

child. *In re J.B.*, 9th Dist. Nos. 24470 and 24473, 2009-Ohio-1054, ¶27 (observing

that a temporary placement offers "none of the protections of legal custody and no

assurance of permanence") .

{¶27} Moreover, we do not agree with appellant that the trial court was

required to seriously consider her father as a placement before awarding appellee

permanent custody. The Ohio Supreme Court considered this same issue in *In re*

*Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, and rejected the

argument that a trial court must find by clear and convincing evidence that no

suitable relative is available for placement before awarding a children services

agency permanent custody.  The court explained that R.C. 2151.414(D)(1)(d)[1] is not entitled to any "heightened importance," and the trial court is not "required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly."  *Id.* at ¶56.  The *Schaefer* court further rejected any argument that a juvenile court must determine "by clear and convincing evidence that 'termination of appellant's parental rights was not only a necessary option, but also the only option' or that "no suitable relative was available for placement."  *Id.* at ¶64.  The court stated that R.C. 2151.414(D) "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor," and it "does not even require the court to weigh that factor more heavily than other factors."  *Id.  Accord C.T.L.A.*, *supra*, at ¶52 (stating that trial court "had no duty to first consider placing the child with [a]ppellant's relatives or a family friend before granting [a]ppellee permanent custody"); *In re J.K.*, 4[th] Dist. Ross No. 11CA3269, 2012-Ohio-214, ¶27 and ¶30; *In re A.C.H.,* 4[th] Dist. Gallia No. 11CA2, 2011–Ohio–5595, ¶44; *In re M.O.*, 4[th] Dist. Ross No. 10CA3189, 2011-Ohio-2011, ¶20 (stating that children services agency "had no statutory duty to make 'reasonable efforts' to effect a relative placement before seeking permanent custody * * * * [, and] the juvenile

---

[1] At the time *Schaefer* was decided, R.C. 2151.414(D)(1)(d) was designated as R.C. 2151.414(D)(4), but no other substantive changes have since been made.

court did not have to find by clear and convincing evidence that no suitable relative was available for placement before awarding the agency permanent custody").

{¶28} Appellant nevertheless asserts that under that Ninth District's rationale in *In re A.A.*, 9th Dist. Summit No. 22196, 2004-Ohio-5955, the trial court was required to determine whether her father could have provided the child with a legally secure permanent placement before terminating her parental rights and awarding appellee permanent custody. However, *A.A.* was decided approximately two years before the *Schaefer* decision. Thus, the rule that appellant cites from *A.A.* ("If a legally secure placement could have been accomplished without terminating parental rights * * * , the agency should have explored it and the trial court should have considered this less drastic alternative to permanently severing a family relationship," *A.A.* at ¶18) is of questionable validity in light of the *Schaefer* court's statement that R.C. 2151.414(D) "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor," and it "does not even require the court to weigh that factor more heavily than other factors." *Schaefer* at ¶64.

{¶29} Consequently, the trial court had no duty to first consider placing the child with appellant's father before granting appellee permanent custody. Thus, we reject appellant's assertion that the court's finding that the child needed a

legally secure permanent placement that could not be achieved without granting appellee permanent custody is against the manifest weight of the evidence.

{¶30} Appellant does not challenge the trial court's findings regarding any of the other R.C. 2151.414(D) factors. In fact, in her "Pre-Trial Hearing Memorandum Opposing Permanent Custody," appellant asserts that if she "had not made significant progress [on her case plan], Counsel would agree that permanent custody would be the best solution." We further note that the trial court considered all of the relevant best interest factors and determined that they weighed in favor of granting appellee permanent custody. The evidence supports the court's decision. The evidence shows that (1) the foster home is the only home the child has ever known, (2) the child is bonded to the foster family, (3) the foster parents will adopt the child if appellee is awarded permanent custody, (4) appellant does not have a bond with the child, (5) the guardian *ad litem* recommended that the court award appellee permanent custody, and (6) appellant could not provide the child with a legally secure permanent placement, and appellee did not deem any relatives suitable. The trial court also reasonably could have determined that uprooting the child from the foster home—the only home he has ever known during his two years of life—and placing him in appellant's father's custody would not be in the child's best interest. In sum, nothing indicates that the court's decision is against the manifest weight of the evidence.

{¶31} Appellant also argues that the trial court's findings that she failed to pay child support while the child was in foster care and that she failed to assist in identifying putative fathers of the child are against the manifest weight of the evidence. If appellant is correct, appellant fails to show that the absence of either fact would have altered the outcome of the proceedings. Again, and even if these findings are against the manifest weight of the evidence, the trial court's overall decision to award appellee permanent custody is not. The record contains ample, competent and credible evidence to support the court's finding under R.C. 2151.414(D) that awarding appellee permanent custody of the child would serve the child's best interest. The findings appellant challenges are superfluous and would not constitute reversible error.

{¶32} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

{¶33} I concur in judgment and opinion with one caveat. The principle opinion indicates at ¶ 28 that the holding in *In re A.A.*, 9th Dist. No. 22196, 2004-Ohio-5955, "is of questionable validity in light of the *Schaefer* court's statement * * *" of a contrary rule. It apparently reaches that conclusion based upon the chronology of the two cases, i.e. "However, *A.A.* was decided approximately two years before the *Schaefer* decision." In my view the validity of *In re A.A.* is not merely questionable but a foregone conclusion. And its demise is not a matter of chronology, but rather one of hierarchy.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:  Concurs in Judgment and Opinion.
Harsha, J.:   Concurs with Concurring Opinion.

For the Court,


BY:  _____
           Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**