[Cite as *In re D.W.*, 2015-Ohio-3532.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| D.W. | : | Case No. 15CA7 |
| | : | |
| | : | DECISION AND JUDGMENT ENTRY |
| ADJUDICATED | : | |
| NEGLECTED CHILD. | : | |
| | : | **RELEASED: 08/25/2015** |

_____

APPEARANCES:

Dennis Kirk, Hillsboro, Ohio, for Appellant.

Anneka P. Collins and Molly Bolek, Hillsboro, Ohio, for Appellee

_____

Harsha, J.

**{¶1}**   D.W. appeals the trial court's judgment awarding Highland County

Children Services (HCCS) permanent custody of his seven-year-old biological child,

D.W., Jr.[1]  D.W. contends that the trial court's decision to award HCCS permanent

custody of the child is against the manifest weight of the evidence because the

evidence fails to show that awarding HCCS permanent custody is in the child's best

interest.  However, the record contains clear and convincing evidence to support the

trial court's decision that awarding HCCS permanent custody of the child is in the child's

best interest.  Despite being given abundant time and opportunity to demonstrate the

necessary parental commitment, D.W. failed to complete the reunification plan. He

failed to obtain adequate housing and employment. His visitation with his son was

---

[1] It appears as though the child is named after his father, and thus should be referred to as D.W., Jr.
However, the caption from the trial court record does not refer to the child as D.W., Jr.  For clarification
purposes, we have chosen to refer to the child D.W., Jr.

sporadic at best. D.W. Jr. has bonded strongly with his foster family and needs permanency in his life. Accordingly, we overrule D.W.'s sole assignment of error and affirm the trial court's judgment.

## I.  FACTS

**{¶2}**   The child's mother entered into a voluntary care agreement with HCCS. HCCS then filed a motion for emergency temporary custody of D.W., Jr., along with his two half-siblings.  HCCS asserted that none of the children's fathers were able to provide care for their respective children.  The court granted HCCS emergency temporary custody of the children.

**{¶3}**   HCCS also filed an abuse, neglect, and dependency complaint concerning D.W., Jr. and requested temporary custody. [2]   The court found that the child's mother and D.W. abandoned him, adjudicated the child neglected, and ordered the child to remain in HCCS's temporary custody.  The court dismissed the abuse and dependency allegations.

**{¶4}**   Subsequently, HCCS filed a motion to modify the disposition to permanent custody, asserting that the mother abandoned the children and that D.W., Jr. cannot be placed with D.W. within a reasonable period of time. The motion alleged that D.W. "has had minimal contact with D.W.[, Jr.] since D.W.[, Jr.] was placed in the custody of the Agency, completing only 6 visits during this period."  HCCS further stated that D.W. is on probation, his home is unsanitary, and HCCS has concerns whether D.W. can provide for the child's basic needs.

---

[2] Because the present appeal does not concern D.W., Jr.'s half-siblings, we omit any further unnecessary reference to the trial court proceedings relating to the half-siblings.

{¶5}  In response, the trial court terminated D.W., Jr.'s mother's parental rights but ordered D.W., Jr. to remain in HCCS's temporary custody so that D.W. could have additional time to fulfill the case plan goals and to demonstrate that he can properly provide for the child.  The court also found that D.W.'s last contact with his child occurred on November 6, 2013, and as of February 14, 2014, the date HCCS filed the amended permanent custody motion, D.W. had abandoned his child.  The court observed that D.W. visited the child only six times since July 26, 2013, but also noted that during those visits, they interacted appropriately.  The court concluded that although D.W.'s efforts "have been minimal[,] he has shown an interest in reunifying with [the child]."  The court thus ordered the child to remain in HCCS's temporary custody until June 21, 2014.

{¶6}  Before that order expired HCCS filed a motion to extend the temporary custody order for an additional six months, asserting that D.W. "has made significant progress on his case plan," but he "has not successfully completed the case plan objectives."  The court extended temporary custody through January 21, 2015.  The court further found "by agreement of the parties and by clear and convincing evidence that [HCCS] has made reasonable efforts to prevent the continued removal of the child[] from the home and to make it possible for the child to safely return home.  The permanency plan is reunification with [D.W.], and [HCCS] has made reasonable efforts to finalize the permanency plan for [the child.  HCCS] is providing case planning services to both [D.W.] and [the child] to address the underlying concerns in the case, as outlined by the case plan filed May 28, 2014."

{¶7}   However, HCCS subsequently filed another motion seeking permanent custody of D.W., Jr., asserting that the child had been in its temporary custody for more than twelve out of the past twenty-two months and that permanent custody is in the child's best interest.

{¶8}   At the permanent custody hearing HCCS caseworker Hannah Larrick stated that the case plan required D.W. to comply with probation, complete a full psychological assessment and follow any treatment recommendations, participate in individual counseling and follow any recommendations, secure safe, stable housing and maintain it for six months, and demonstrate that he can provide for child's basic needs.

{¶9}   HCCS caseworker Melissa Wheaton testified that D.W. attended thirteen out of seventy-one available visits with the child.  She explained that D.W. did not have any visits with the child during the following time periods:  (1) May 31, 2013 to July 26, 2013; (2) July 26, 2013 to September 4, 2013; (3) November 6, 2013 to April 3, 2014; (4) April 30, 2014 to July 16, 2014; (5) July 16, 2014 to December 3, 2014; and (6) December 3, 2014 until the date of the permanent custody hearing.

{¶10}  The child's foster mother stated that the child has continuously been in her home since removed from his mother's care on May 31, 2013.  She testified that the child lives in her home with his two half-siblings and that she does not believe "that they could live without each other."  The foster mother further stated that if the court awards HCCS permanent custody of D.W., Jr., she intends to adopt D.W., Jr. and his half-siblings.

{¶11}  HCCS caseworker Donna Bourne testified that in November 2014, she met with D.W. to discuss his case plan progress.  She stated that D.W. did not have

independent, permanent housing, but instead, lived with a friend. Bourne also indicated that D.W. had not completed a full psychological assessment. She additionally related that appellant admitted he had not seen the child since the summer, but D.W. explained that he had transportation issues and lacked a driver's license. Bourne stated that while speaking with D.W., he seemed to easily lose track of his thoughts, had trouble remembering things, and quickly became emotional. She further testified that D.W. appeared to look at his friend for answers before he would answers questions that she asked.

{¶12} Bourne stated that she met with D.W. again on January 26, 2015 to review his case plan progress. Bourne indicated that D.W. had completed a mental health assessment, but he did not complete a psychological evaluation. She testified that D.W. had an appointment scheduled on February 11 to discuss his housing options.

{¶13} During closing arguments the guardian *ad litem* recommended that the court award HCCS permanent custody of the child, primarily due to the bond he shares with his half-brothers. The guardian *ad litem* asserted that the children should remain together and that it is not in the child's best interest to be separated from his half-brothers. The guardian *ad litem* stated that the child is "strongly bonded" with his half-brothers and "very attached to his foster parents." The guardian *ad litem* further expressed concerns regarding D.W.'s ability to provide proper care for the child and does not believe that D.W. "can overcome the obstacles that he needs to overcome to be able to defeat the motion for permanent custody."

{¶14} The court terminated D.W.'s parental rights and awarded HCCS permanent custody. The court found that (1) the child has been in HCCS's temporary

custody for more than twelve of the past twenty-two months, (2) the child "is extremely bonded with his [half]-siblings in their current foster home," (3) the foster parents intend to adopt the child if permanent custody is granted to HCCS, (4) the child "has expressed his desire to remain with his [half]-siblings in the * * * foster home," and (5) D.W.'s contact has been infrequent but appropriate. The court observed that although D.W. claimed transportation difficulties prevented him from visiting with the child more frequently, he "was able to travel monthly to Clinton County, Ohio * * * to meet with his Probation Officer with very few exceptions." The court further noted that approximately one year earlier, it overruled HCCS's motion to permanently terminate D.W.'s rights in order to allow him a chance to reunify with the child. The court found that since that time, D.W. "has elected not to obtain permanent housing or income which would enable him to care for and parent D.W. He has not taken the steps necessary to lift the suspension of his drivers [*sic*] license which is arguably necessary to transport [the child] to his frequent doctor and speech therapy appointments." The court determined that it is in the child's best interest to terminate D.W.'s parental rights and to place the child in HCCS's permanent custody.

## II. ASSIGNMENT OF ERROR

**{¶15}** D.W. raises one assignment of error:

"The trial court erred in finding that permanent custody was in the best interests of the child. The court's best interest analysis was against the manifest weight of the evidence."

## III. ANALYSIS

**{¶16}** In his sole assignment of error, D.W. asserts that the trial court's decision to award HCCS permanent custody is against the manifest weight of the evidence

because the evidence fails to clearly and convincingly show that awarding HCCS permanent custody is in the child's best interest.

## A. STANDARD OF REVIEW

**{¶17}** "A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In re R.S.,* 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29; *accord In re J.V.-M.P.,* 4th Dist. Washington No. 13CA37, 2014–Ohio–486, ¶11. To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *R.S.* at ¶30, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20. In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact. *Id.* at ¶33, citing *Eastley* at ¶21. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *accord In re Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, ¶7. As the Ohio Supreme Court explained long-ago: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by

printed record." *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the

parties before a trial, in a permanent custody case a trial court judge may have

significant contact with the parties before permanent custody is even requested. *In re

R.S.* at ¶34. In such a situation it is not unreasonable to presume that the trial court

judge had far more opportunities to evaluate the credibility, demeanor, attitude, *etc.,* of

the parties than this court ever could from a mere reading of the permanent custody

hearing transcript. *Id.*

{¶18} In a permanent custody case, the dispositive issue on appeal is "whether

the juvenile court's findings * * * were supported by clear and convincing evidence." *In

re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43; *accord* R .C.

2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof

which is more than a mere 'preponderance of the evidence,' but not to the extent of

such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which

will produce in the mind of the trier of facts a firm belief or conviction as to the facts

sought to be established." *Cross v. Ledford,* 161 Ohio St.469, 120 N.E.2d 118 (1954),

paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio

St.3d 350, 2013–Ohio–3720, 995 N.E.2d 1175, ¶14. "[I]f the children services agency

presented competent and credible evidence upon which the trier of fact reasonably

could have formed a firm belief that permanent custody is warranted, then the court's

decision is not against the manifest weight of the evidence." *In re R.M.,* --- Ohio App.3d

---, 2013–Ohio–3588, 997 N.E.2d 169, ¶55 (4th Dist.). The essential question we must

resolve when reviewing a permanent custody decision under the manifest weight of the

evidence standard is whether the amount of competent, credible evidence presented at trial produced in court's mind a firm belief or conviction that permanent custody was warranted. *In re J.H.*, 4th Dist. Hocking No. 14CA4, 2014-Ohio-3108, ¶14.

## B. PERMANENT CUSTODY PRINCIPLES

**{¶19}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed .2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.*, 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829.  A parent's rights, however, are not absolute. *D.A.* at ¶11.  Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best interest demands such termination.  *D.A .* at ¶11.

## C. PERMANENT CUSTODY FRAMEWORK

**{¶20}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines by clear and convincing evidence that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
(e) The child or another child in custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶21}** Thus, before a trial court may award a children services agency permanent custody it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.  Here, the court found that R.C. 2151.414(B)(1)(d) applied, and  D.W. does not challenge this finding.  Thus, we do not address it.

### D. BEST INTEREST

**{¶22}**  "In a best-interests analysis under R.C. 2151.414(D), a court must consider 'all relevant factors,' including five enumerated statutory factors * * *.  No one element is given greater weight or heightened significance." *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶57, citing *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶56. The five enumerated factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that

type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply. In this case, D.W. challenges the court's findings regarding the child's interactions and interrelationships, the child's wishes, and the child's need for a legally secure permanent placement.

**{¶23}** The record contains clear and convincing evidence to support the trial court's best interest determination. The evidence shows that the child shares a substantial bond with his half-brothers and foster family. Although D.W. may claim that he shares a strong relationship with the child, he has not shown a fervent desire to continuously visit with the child. D.W.'s interaction with his child may have been appropriate when it occurred, but it was minimal in frequency. Several lengthy time periods elapsed when D.W. did not visit the child at all, and the trial court even made a finding that D.W. abandoned the child due to his extended periods of absence from the child's life. We have no doubt that D.W. loves his child and wishes to have custody of him, but D.W. did not show that he is willing to maintain the continuous relationship and interaction necessary in any parent-child relationship. Without a commitment to continuous interaction and relationship with the child, we fail to see how D.W. could forge a bond with the child that is at least as substantial as the one the child shares with his half-brothers and the foster family. Even if D.W.'s lack of visiting with the child resulted from transportation difficulties, the trial court noted that D.W. apparently had no issue arranging transportation in order to meet with his probation officer, which the court found required D.W. to travel approximately the same distance he would have to travel

to visit with the child.  The court thus could justifiably discredit D.W.'s claimed transportation difficulties.

{¶24}  D.W. appears to blame HCCS for failing to help him with transportation, thus implying that HCCS failed to use reasonable efforts.  However, the trial court entered reasonable efforts findings earlier in the case and specifically noted that its finding was based upon the agreement of all parties to the case.  *See In re C.F.* at ¶43 (concluding that even though R.C. 2151.419(A)(1) does not require a reasonable efforts finding when a court considers a permanent custody motion filed under R.C. 2151.413, "the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights" and "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.").  On August 22, 2014, the court entered a specific finding that HCCS used reasonable efforts.  The court found that "by agreement of the parties and by clear and convincing evidence * * * [HCCS] has made reasonable efforts to prevent the continued removal of the child[] from the home and to make it possible for the child to safely return home.  The permanency plan is reunification with [D.W.] , and [HCCS] has made reasonable efforts to finalize the permanency plan for [the child.  HCCS] is providing case planning services to both [D.W.] and [the child] to address the underlying concerns in this case, as outlined by the case plan filed May 28, 2014."  When the court entered this reasonable efforts finding, D.W. did not complain that HCCS failed to address any alleged transportation issues, even though he was obviously well-aware by August 2014 of the number of visits with the child that he did not attend.  Furthermore, at the

permanent custody hearing, one of HCCS's caseworkers testified that she discussed D.W.'s transportation issues with him and advised him of public transit options. Another HCCS caseworker stated that he also talked to D.W. about his transportation issues, but D.W. "seemed pretty confident that he could find rides." This caseworker also discussed scheduling visits on dates when D.W. would be meeting with his probation officer, which apparently would have been more convenient for D.W. Thus, the record shows that HCCS was aware of D.W.'s alleged transportation issues and offered solutions. But D.W. did not avail himself of any of those solutions.

{¶25} D.W. additionally argues that the record fails to contain any evidence regarding the child's wishes. However, the trial court indicated that it reviewed the guardian *ad litem*'s report, which stated that the child wants to remain living with his half-brothers and foster family. R.C. 2151.414(D)(1)(b) "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian *ad litem*." *In re C.F.* at ¶5. Moreover, the guardian *ad litem* provided a closing argument to the court and reiterated that the child should remain with the foster family and his half-brothers. Consequently, we disagree with D.W. that the record fails to contain evidence regarding the child's wishes.

{¶26} Furthermore, to the extent D.W. claims that the trial court should have interviewed the child, D.W. never requested the trial court to conduct an *in camera* interview of the child. Thus, appellant failed to preserve this issue for appellate review. *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶33, citing *In re M.C.,* 9th Dist. Summit No. 24797, 2009–Ohio–5544, ¶36 (determining that parent's argument trial court erred by failing to consider child's direct wishes lacked merit when parent "did

not request that his child testify at the hearing, nor did he ask the trial judge to conduct an *in camera* interview of the child").

**{¶27}** D.W. also argues that the evidence fails to support a finding that the child needs a legally secure permanent placement that cannot be achieved without granting HCCS permanent custody. D.W. contends that he could provide the child with a legally secure permanent placement. The record contains evidence to the contrary. The evidence shows that D.W. was aware by the middle to latter part of 2013 that the child needed a legally secure permanent placement. The 2013 case plan required D.W. to obtain safe and stable housing. When the court denied HCCS's initial permanent custody motion D.W. again was made aware of the case plan requirement to obtain safe and stable housing, and the court afforded D.W. additional time to obtain safe and stable housing. The court gave D.W. ample opportunity to prove that he is willing to provide the child with a safe and stable home. As of the date of the permanent custody hearing, D.W. had yet to obtain a safe and permanent home. Instead, he remained living in a friend's home.

**{¶28}** D.W. attempts to blame HCCS for its alleged lack of efforts assisting him in locating safe and stable housing. However, the trial court previously found that HCCS used reasonable efforts, and, during the trial court proceedings, D.W. never raised any concern that HCCS failed to employ reasonable efforts to help him fulfill the case plan goals. Additionally, the focus when a court considers a permanent custody motion under R.C. 2151.414 is not upon the children services agency's actions or inactions. R.C. 2151.414(C) ("The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect

of the child's case plan."). Instead, the focus is upon the child's best interest. *In re A.A.*, 4th Dist. Athens No. 14CA38, 14CA39, and 14CA40, 2015-Ohio-1962, ¶60, citing *D.A., supra,* 2007–Ohio–1105, ¶ 1. ("Once the case reaches the disposition phase, the best interest of the child controls."). Moreover, as this court frequently recognizes:

> """ * * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."""

**{¶29}** *W.C.J.* at ¶48, quoting *In re Bishop,* 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987), quoting *In re East,* 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346 (1972).

**{¶30}** While D.W. may have made some steps to obtain a permanent home by the date of the permanent custody hearing, he did not show why he had been unable to do so during the previous year and one-half that the case had been pending. The court could have determined that D.W.'s actions were far too little, far too late and demonstrated that he would not be able to provide the child with a legally secure permanent placement. No evidence exists that the child has a viable legally secure permanent placement outside HCCS's custody.

**{¶31}** Here, in March 2014, the court denied HCCS's request for permanent custody of D.W., Jr. in order to give D.W. additional time to complete the case plan goals, including obtaining safe and stable housing. By February 2015, D.W. had failed to obtain suitable housing. The court was not obligated to provide D.W. with yet another opportunity to show that he could obtain suitable housing. Thus, clear and convincing

evidence supports a finding that the child needs a legally secure permanent placement and that this placement cannot be achieved without granting HCCS permanent custody. The record supports the trial court's finding that awarding HCCS is in the child's best interest. Thus, its decision is not against the manifest weight of the evidence. Accordingly, we overrule D.W.'s sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Juvenile Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
     William H. Harsha, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**